Terri SHERMAN, Plaintiff,

v.

CITY OF LEE'S SUMMIT, MISSOURI, Defendant.

No. 83–0274–CV–W–1.

United States District Court, D. Missouri, W.D.

Dec. 19, 1983.

C.M. Alvarez, Laurence F. Alter, St. Louis, Mo., for plaintiff.

Stanley E. Craven, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS

JOHN W. OLIVER, Senior District Judge.

### I. *Introduction*

Plaintiff filed a four count complaint on March 15, 1983. Count I of that complaint alleged a Title VII action based on sex discrimination; Count II alleged a Title VII action based on retaliation; Count III alleged an equal pay violation under the Equal Pay Act; and Count IV alleged a breach of contract claim based on an alleged violation of an August 20, 1981 settlement agreement that resolved a prior Title VII sex discrimination charge which plaintiff filed against the defendant.

On November 17, 1983, shortly before trial, plaintiff filed a motion to dismiss Count IV, the breach of contract count, with prejudice. Plaintiff's motion, which alleged that "discovery has shown that the evidence plaintiff could adduce at trial would not be sufficient to sustain plaintiff's complaint under this count," was granted and the first three counts were tried without a jury.[1]

### II.

■ Defendant's motion to dismiss Count III, plaintiff's Equal Pay Act claim, filed November 3, 1983, was taken with the case. That motion was based on the theory that plaintiff alleged only that she had performed duties "substantially similar" to the duties performed by male employees and that plaintiff's failure to allege, in the language of the Equal Pay Act, that plaintiff performed *"equal* work on jobs the performance of which requires *equal* skill, effort, and responsibility, and which are performed under similar working conditions," was fatally defective. While it may have been more technically appropriate for plaintiff to have alleged that her duties were "substantially *equal,"* rather than

---

1. The August 20, 1981 settlement agreement (Exh. 6) provided that defendant would pay plaintiff $6,978.75 and assign her to a position to be paid at a Grade 8 level with duties to be established by defendant's Director of Public Safety. Plaintiff agreed to file a withdrawal of her earlier EEOC charge and released defendant from all liability for events occurring up to the date of the settlement agreement.

Plaintiff's EEOC charge of discrimination involved in this case (Exh. 8), as was later reiterated in Count IV of plaintiff's complaint, was based in substantial part on plaintiff's claim that "the respondent is violating the provisions of that [settlement] agreement." Plaintiff further stated in her EEOC charge involved in this case that "I feel that the Settlement Agreement that I signed should be voided because of coercion by Respondent employer and their failure to adequately explain the provisions of the above-mentioned agreement" and that "I feel that even if the Settlement Agreement is valid, which I deny, the Respondent employer has breached the said Agreement."

The dismissal of Count IV on plaintiff's motion effectively removed all questions concerning the validity of and defendant's compliance with the August 20, 1981 settlement agreement from the trial of this case.

"substantially *similar*," as stated in *Corning Glass Works v. Brennan*, 417 U.S. 188, 200 fn. 24, 94 S.Ct. 2223, 2230 fn. 24, 41 L.Ed.2d 1 (1974) and in *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir.1980), we will enter an order denying defendant's motion to dismiss Count III and determine plaintiff's Equal Pay Act claims on the merits.

The parties' compliance with this Court's standard procedures for the trial of non-jury cases, which require the filing of proposed findings of fact and proposed conclusions of law and the filing of cross-fire responses to opposing counsel's submissions in which counsel admit or deny the findings of fact and conclusions of law proposed by opposing counsel, together with the 57 paragraph stipulation of fact executed by the parties, has substantially reduced the number of issues of fact in dispute.

We shall state the undisputed findings of fact in Part III, A, *infra.* For convenience, we will follow the paragraph numbers of defendant's proposed findings of fact which have been admitted by plaintiff and thereafter discuss the paragraphs of plaintiff's proposed findings of fact that have been admitted by defendant. We have added "Denied" after particular paragraphs in Part III, A, to indicate plaintiff's denial of that paragraph of defendant's proposed findings of fact. "(Stip. No.)" and a parenthetical reference to a page or pages of plaintiff's deposition have been added after a particular finding of fact as a supporting reference to a particular paragraph of the parties' stipulation or to undisputed deposition testimony. All disputed issues of fact will be resolved in Part III, B, *infra.*

## III. FINDINGS OF FACT

### A. *Undisputed Findings of Fact*

1. Plaintiff Terri Sherman is a female citizen of the United States. (Stip. 1)

2. Defendant is a municipal corporation and fourth class city of the State of Missouri and has been at all material times herein an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, and of the Equal Pay Act, 29 U.S.C. 206(d). (Stip. 2)

3. Plaintiff was first employed by defendant on November 13, 1973 in the classification of Police Dispatcher. She was subsequently transferred to the position of Records Clerk in mid-1975 and to the position of Data Control Clerk in mid-1976. (Stip. 3)

4. On October 28, 1978, plaintiff was promoted to a position titled Supervisor/Administrative Services Division (sometimes called Administrative Supervisor). The pay grade for this position initially was a GS 5 but the position was reclassified as a Grade 6 when a new pay system was implemented to replace the City's old "GS" system. (Stip. 4)[2]

5. Subsequently, around August, 1980, plaintiff's job was revised and the title was changed to Supervisor of Central Records and Recovered Property. She remained a Grade 6 in this position. (Stip. 6)

6. On September 10, 1980, plaintiff filed a charge of discrimination and of retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Stip. 7)

7. Following numerous discussions and an exchange of proposals between plaintiff and defendant's Director of Public Safety, Kenneth Wright, plaintiff and defendant entered into a Settlement Agreement "resolving all issues raised by Ms. Sherman's pending charge with the Equal Employment Opportunity Commission and all related grievances." (Stip. 9; Stip. Exh. 6)

8. Pursuant to the Settlement Agreement, defendant paid plaintiff $6,978.75,

---

**2.** Our finding of fact in paragraph 4 above is made in the exact language of paragraph 4 of the parties' stipulation. Defendant's proposed finding of fact contained a modification of the language of that paragraph of the stipulation, which plaintiff denied. Our use of the exact language of the stipulation moots plaintiff's denial of defendant's proposed finding of fact.

plus overtime pay, and assigned a position paid at a Grade 8 level.[3] (Stip. Exh. 6)

9. The Settlement Agreement included a general release by plaintiff of all claims against the City occurring up to August 20, 1981. It also included a non-admission of liability clause for the City. (Stip. Exh. 6)

10. [Denied] [4]

11. Plaintiff contends that she was denied equal pay for equal work and names as male comparables Stephen Underwood and James Oakley.

12. Underwood became Assistant Director of Police on November 10, 1979. He had served as Acting Assistant Director for a period of time prior to that. His pay grade as Assistant Director was Grade 11 and his rank was Captain.[5]

13. On March 16, 1981, Underwood was reassigned from the position of Assistant Director to the position of Commander/Patrol Section.

14. On September 1, 1981, Underwood was reassigned to the position of Police Captain, Criminal Investigation Section (also sometimes called Commander, CIS).

15. Underwood began serving as Acting Deputy Chief of the Police Department on November 6, 1982 and while so serving was paid as a Grade 12. Otherwise, at all material times since November 10, 1979, he has been a Grade 11.

16. [Denied]

17. For her part, plaintiff supervises three or four clerical employees. She does not supervise anyone with law enforcement responsibilities.

18. [Denied]

19. [Denied]

20. Pursuant to the laws of the State of Missouri, R.S.Mo. 590.110, in order to serve in a law enforcement position, an employee must be certified as a peace officer.[6] Oakley and Underwood are so certified but plaintiff is not.

21. Both James Oakley and Steve Underwood are commissioned police officers with the power to make arrests (admitted). Both are exempt employees not entitled to overtime pay for hours worked in excess of 40 in a workweek. (Stip. 22) Plaintiff is not a commissioned officer, does not have the power to make arrests and is paid for hours worked in excess of 40. (Stip. 22).

---

**3.** Paragraph 8 of our findings of fact has been modified in accordance with plaintiff's cross-fire response. Our finding of fact uses the precise language of Exh. 6.

**4.** Paragraph 10 of defendant's proposed finding of fact, denied by plaintiff, stated: "In view of the Settlement Agreement resolving all claims and grievances of plaintiff, and in view of the compliance by defendant with the terms of the Settlement Agreement, the remainder of these findings focus on events and claims occurring subsequent to August 20, 1981."

While we do not make the finding of fact proposed by defendant as an undisputed fact, we note that in light of the dismissal of Count IV of plaintiff's complaint on plaintiff's motion, the relevant time period involved in this case does relate to events that occurred subsequent to the August 20, 1981 Settlement Agreement.

**5.** Although paragraphs 12 to 15, inclusive, of defendant's proposed findings of fact modified the language of paragraphs 16 to 18, inclusive, and paragraph 20 of the parties' stipulation, it is clear that defendant's proposed findings of fact were based on those paragraphs of the stipulated facts.

In order to moot plaintiff's denial of the above four paragraphs of defendant's proposed findings, we have made our findings of fact in paragraphs 12 to 15 above in the exact language of the appropriate paragraphs of the stipulation upon which defendant based its proposed findings of fact.

**6.** Plaintiff's cross-fire admission was conditioned by the statement "Admit as to what the statute literally states." We accordingly quote and find that the relevant portion of R.S.Mo. 590.110 provides that: "Effective January 1, 1979, no person shall be employed or appointed as a peace officer by any public law enforcement agency, which is possessed of the duty and power to enforce the general criminal laws of the state or the ordinances of any political subdivision of this state, unless he has been certified by the director as a peace officer as provided in sections 590.100 to 590.150."

22. Although plaintiff at one time served as a Reserve Police Officer for defendant, she has never applied to be a regular Police Officer (Pl. Dep. p. 121) and she voluntarily quit her Reserve Position. (Pl. Dep. p. 131).

23. In order to become a Captain in the Police Department, one must first be a Police Officer and then a Sergeant, and plaintiff has at all times in her employment been aware of this military rank structure. (Pl. Depo. p. 123)

24. Plaintiff admits that she has "had no aspirations to be a Police Officer" (Pl. Depo. p. 124) and that she intentionally "chose not to take that career path." (Pl. Depo. p. 125)

25. Plaintiff admits that she currently holds the highest administrative position in the Police Department. (Pl. Dep. p. 126)

26. Plaintiff testified as follows on deposition (p. 130):

Q. If you became a Police Officer right now, you would be paid at a grade 8?

A. I believe so, yes.

Q. And as a Police Officer, there would be other positions to which you could then be promoted; isn't that correct?

A. If I had the desire to be a Police Officer, I'm sure there would be.

Q. But the answer then, is that you don't have the desire to be a Police Officer?

A. Right.

27. to 30. [Denied]

31. Plaintiff admits that she has not been subjected to any formal disciplinary action at least since the Settlement Agreement in August, 1981. (Pl. Dep. p. 163)

32. [Denied]

33. In her letter of August 10, 1981, plaintiff praises Ken Wright for his honesty and efforts on her behalf. (Stip. Exh. 5)

34. to 39. [Denied]

40. [10][7] Plaintiff has received 286 hours of basic police training at the Raytown Missouri Police Academy and received a diploma certifying this training on May 27, 1976. Plaintiff is a high school graduate and has received some college credit.

41. [11] Plaintiff has received specific training in the areas of Supervision, Management and Data Processing.

42. [12] Plaintiff was commissioned a Reserve Officer in the City of Lee's Summit Police Department.

43. [13] Plaintiff resigned her Reserve Officer Commission.

44. [14] Steve Underwood, an employee in the Police Department of defendant, does not have as many hours of police training at a Police Academy as plaintiff.

45. [15] Plaintiff is and has been the only female supervisor in the Police Department of defendant and currently occupies the position at a Grade Level 8. All other supervisors are male and a Grade Level higher than plaintiff and receive higher wages than plaintiff.

46. [16] James Oakley, an employee of the Police Department of defendant has the same or less hours of police training at a Police Academy as plaintiff.

47. [17] Defendant's Police Department has undergone several reorganizations since 1978 to the present. As a result of these reorganizations, duties and responsibilities have been reallocated in the Police Department among employees. During this period several positions have been re-

7. Additional undisputed factual data was established by the admissions stated in defendant's cross-fire response to plaintiff's proposed findings of fact. Paragraph "40. [10]" and the paragraphs numbered in the same manner to follow, continues the sequential numbering of our findings of fact; "[10]" which has been added to "40," for example, identifies defendant's cross-fire admission of paragraph 10 of plaintiff's proposed findings of fact.

Findings of fact proposed by plaintiff and admitted by defendant's cross-fire response which duplicate findings of fact proposed by defendant and admitted by plaintiff's cross-fire response are not repeated. Those admitted findings of fact which do not duplicate findings of fact proposed by defendant and admitted by plaintiff's cross-fire response are stated and numbered as above indicated.

classified and renamed and the corresponding pay grade has been changed.

48. [18] The City of Lee's Summit provides through ordinance that promotions be accomplished through specified procedures. However, a reclassification of a position is exempt from the promotion procedure of the City of Lee's Summit.

49. [20] Terri Sherman has been reclassified once as a result of a Settlement Agreement entered into with defendant to resolve charge numbers 071801655 and 071809083 and became a Pay Grade 8. Terri Sherman is currently a Grade 8.

50. [25] James Oakley and Steve Underwood are commissioned police officers.

51. [26] Steve Underwood usually does not wear his police uniform to work nor carry a gun on his person (he keeps it in his car) and has not made an arrest in the last five years. (He supervises arrests.)

52. [28] Throughout plaintiff's career with defendant she has performed competently.

53. [29] Plaintiff's performance evaluations have been in general satisfactory as to her competence, effort and fulfillment of her duties.

54. [32] The City of Lee's Summit Pay Schedule for fiscal year 1983–1984 is as follows:

| Grade | | Annual | Monthly | Bi-Wk. | 80 Hour | 112 Hour |
|---|---|---|---|---|---|---|
| 8 | Minimum | 15,674 | 1,306.17 | 602.85 | 7.5356 | 5.3826 |
| | Midpoint | 19,872 | 1,656.00 | 764.31 | 9.5538 | 6.8242 |
| | Maximum | 24,069 | 2,005.75 | 925.73 | 11.5716 | 8.2655 |
| 9 | Minimum | 17,268 | 1,439.00 | 664.15 | 8.3019 | 5.9299 |
| | Midpoint | 21,892 | 1,824.33 | 842.00 | 10.5250 | 7.5179 |
| | Maximum | 26,516 | 2,209.67 | 1,019.85 | 12.7481 | 9.1058 |
| 10 | Minimum | 18,994 | 1,582.83 | 730.54 | 9.1317 | 6.5227 |
| | Midpoint | 24,116 | 2,009.67 | 927.54 | 11.5942 | 8.2816 |
| | Maximum | 29,237 | 2,436.42 | 1,124.50 | 14.0563 | 10.0402 |
| 11 | Minimum | 20,854 | 1,737.83 | 802.08 | 10.0260 | 7.1614 |
| | Midpoint | 26,405 | 2,200.42 | 1,015.58 | 12.6947 | 9.0677 |
| | Maximum | 31,956 | 2,663.00 | 1,229.08 | 15.3635 | 10.9739 |
| 12 | Minimum | 22,979 | 1,914.12 | 883.81 | 11.0476 | 7.8911 |
| | Midpoint | 29,167 | 2,430.58 | 1,121.81 | 14.0226 | 10.0161 |
| | Maximum | 85,355 | 2,946.25 | 1,359.81 | 16.9976 | 12.1411 |

55. [33] There are currently no women police officers at the rank of Sergeant or above.

56. [34] The only women employees except for plaintiff in defendant's Police Department occupy clerical, record and secretarial positions.

### B. *Resolution of Disputed Issues of Fact*

■ *Equal Pay Act Claim.* Plaintiff appropriately recognized in paragraph 19 of her proposed conclusions of law that "a claimant in an Equal Pay Act case bears the burden of showing that employees of one sex were paid less than employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions. 29 U.S.C. Section 206(d)(1) (1976)."

Various paragraphs of plaintiff's proposed findings of fact reflect plaintiff's factual theory of the case. Steve Underwood and James Oakley were identified in paragraph 19 of plaintiff's proposed findings of fact as the male employees of the defendant who were allegedly being paid more money for work equal to that performed by the plaintiff on jobs which plaintiff contends required equal skill, effort, and responsibility and which were performed under similar working conditions. Plaintiff proceeds on the factual theory that all jobs

which require the performance of what plaintiff calls "administrative supervisory functions" (see paragraph 11 of plaintiff's proposed conclusions of law) involve "equal work" within the meaning of the Equal Pay Act and that the evidence adduced at trial supports a finding of fact that "all administrative supervisory staff of defendant's Police Department work under similar working conditions" (paragraph 36 of plaintiff's proposed findings of fact). Plaintiff also contends that she is entitled to a finding of fact that "Plaintiff is qualified to perform any and all administrative and supervisory functions of defendant's Police Department" (paragraph 37 of plaintiff's proposed findings of fact.) [8]

The only particularized findings of fact proposed by plaintiff to establish that she was qualified to perform the work required of Captain Underwood's job as head of the defendant's Criminal Investigation Unit was that she had more hours of police training at a Police Academy than Underwood (Plaintiff's proposed findings of fact, paragraph 25); that his work consisted of "administrative duties conducted at Police Department offices" (*Id.*, paragraph 25); that he did not "wear his police uniform to work nor carry a gun and has not made an arrest in the last five years" (*Id.*, paragraph 26). Plaintiff proposed similar findings of fact in regard to James Oakley, the Public Information Officer of defendant's

Police Department (*Id.*, paragraphs 16, 25 and 27).

■ Defendant, of course, contends on the facts that the work performed by plaintiff simply did not involve substantially equal duties to the jobs held by Captain Underwood and Public Information Officer Oakley and that plaintiff's work did not, in fact, involve or require equal skill, effort, and responsibility within the meaning of the Equal Pay Act. We determine whatever slight conflict that may exist in the definitive evidence adduced at trial in favor of the defendant and against the plaintiff. We further find that plaintiff has failed to carry the burden of proving any violation of the Equal Pay Act.

We find, consistent with the broad outline stated in our findings of undisputed facts in part II, A, above, that Captain Underwood was a career police officer who began his service as patrol officer and was thereafter promoted through the ranks to Sergeant and eventually to Captain. Comparison of plaintiff's job description (Exh. 7) with Captain Underwood's job description (Exh. 15), consistent with the greater weight of the credible evidence at trial, establishes that the two jobs are completely different, one from the other. An important requirement of Captain Underwood's job, which the evidence established is directly related to the satisfactory performance of the job, is 4 to 6 years of law enforcement experience, a requirement that plaintiff could not meet. [9]

---

**8.** The breadth of plaintiff's factual claim may be measured by reference to portions of plaintiff's deposition testimony adduced at trial. On page 81 of her deposition, plaintiff was asked to identify all "male employees of the City of Lee's Summit who you believe performed work which required equal skill, effort, and responsibility to—which you performed, but for which you were paid less." (Plaintiff's deposition, p. 81.) Plaintiff proceeded to name the two male Division Commanders of defendant's Police Department (*Id.* p. 82); the Assistant Director of Police (*Id.*, p. 82); all Sergeants of defendant's Police Department (*Id.*, p. 84); the department's Public Information Officer (*Id.*, p. 85); all the department's Captains—plaintiff testified "I have more responsibility in my present position than the Captains, but they are paid more than I am ... add Captains to [the] list"—(*Id.* pp. 86–87); and the Department's Deputy Chief of Po-

lice, (*Id.* p. 102). Indeed, it was only when plaintiff was asked whether she considered that she was "equal to the Chief" did plaintiff give a negative answer (*Id.* p. 103). Plaintiff added: "I would say that the Chief of Police is his own entity. I have no thought of ever feeling that I could be in his shoes" (Id. p. 103). Both plaintiff's trial and deposition testimony established, however, that with the exception only of the Chief of Police, plaintiff believed that she could fill the shoes of every job in defendant's Police Department which may involve the performance of any "administrative supervisory function."

**9.** Plaintiff's lack of law enforcement experience and her resignation as a Reserve Police Officer is detailed in paragraphs 22 to 26 of our undisputed findings of fact in Part II, A, above. We further find that plaintiff conceded that during

We find that plaintiff's job required neither law enforcement experience nor law enforcement responsibility. We further find that her supervision duties were restricted to what were basically clerical employees; her job did not require the supervision of persons charged with law enforcement responsibilities.

Public Information Officer Oakley, who was reassigned to that job several months after plaintiff filed her most recent EEOC charge (see Exh. 13), began his service with defendant as a Detention Officer on March 28, 1977. His personnel record and other evidence adduced at trial established that James Oakley became a Reserve Police Officer in July, 1977 and was named as probationary Police Officer in November, 1978. A comparison of the job description for the position of Public Information Officer (Exh. 20) with the plaintiff's job description (Exh. 7) and the greater weight of the credible evidence adduced at trial requires the same finding of fact as that made in regard to Captain Underwood's job. We find that plaintiff's job and James Oakley's job have virtually nothing in common and do not require equal skills, effort, and responsibility. As in the case of Captain Underwood's job, the job of Public Information Officer required five years experience in law enforcement, a requirement which we find was directly related to the satisfactory performance of the job and which plaintiff could not meet.

While it is true that both Captain Underwood and Public Information Officer Oakley received their most recent promotions as a result of reclassification rather than as a result of promotion procedures, we expressly find that no credible evidence was adduced in this case that the various job descriptions to which we have made reference or the procedures followed in regard to the promotions and wage increases granted Captain Underwood and Public Information Officer Oakley were prepared or

the period of time she was a Reserve Officer, all male and female Reserve Officers were paid the same and that it was "quite often the case that

followed for any pretextual purpose of concealing any discriminatory action directed toward plaintiff.

The above specific findings of fact require that we find as a matter of ultimate fact that plaintiff failed to carry the burden of proving any violation of the Equal Pay Act.

*Title VII Claims.* Plaintiff's post-trial brief stated in regard to plaintiff's Count I, Title VII claim, that "plaintiff has been discriminated against on the basis of her sex by not being assigned and by not being allowed to perform duties and assume responsibilities in the same manner as male employees of defendant." Plaintiff argued in her post-trial brief that "the facts established at trial clearly established that plaintiff was not assigned jobs and responsiblities in the same manner as male employees." Examination of plaintiff's proposed findings of fact, however, reveals that only paragraph 23 of plaintiff's proposed findings of fact sought any specific findings of fact which could be said to relate to that particular subject.

■ We find that the greater weight of the credible evidence does not support either plaintiff's argument or her proposed findings of fact. We expressly find that plaintiff did not in fact apply for any promotion and that she was not denied any promotional opportunity afforded any other employee of the defendant from the time she was reclassified pursuant to the August 10, 1981 settlement agreement.

We have not overlooked plaintiff's contention that she was "specifically told that she will not be allowed to work outside her job description," as stated in the last sentence of paragraph 23 of plaintiff's proposed findings of fact. That contention is an obvious reference to the directions given her by defendant's Director of Public Safe-

one could "go from being a Reserve Police Officer to a regular Police Officer" (Plaintiff's deposition p. 120).

ty. Wright at a meeting held February 2, 1982 with plaintiff which was also attended by the then Chief of Police Henderson (See Exh. 30). We have no doubt from the testimony at trial and from the contemporaneous documentary evidence that the February 2, 1982 meeting was indeed a stormy session. We find that Director Wright accurately closed his memorandum of that meeting with the statement that "Ms. Sherman was very upset" (Exh. 30, p. 2).

Exhibit 8, plaintiff's EEOC charge, filed February 4, 1982, two days after the meeting, also accurately reflected plaintiff's reaction to that meeting. She stated in her EEOC charge that "in a meeting of February 2, 1982, I was called into the office of Mr. Kenny Wright, Public Service Director, and harassed for approximately two hours." We expressly find that plaintiff was not harassed at that meeting.

We further find that the meeting was held for the reasons generally stated in Director Wright's memorandum and that the directions given plaintiff were appropriate under the circumstances. Both plaintiff's trial and deposition testimony established that she was committed to the view that the language of the August 20, 1981 settlement agreement which provided that she would "be assigned a position paid at Grade 8 level with duties to be established by the Director of Public Safety" (Exh. 6) required that she be given a written job description.

For example, when plaintiff was asked to identify what happened since the settlement agreement was executed on August 8, 1981 that constituted discriminatory conduct on the part of the defendant, plaintiff testified at her deposition that:

I guess the first thing would be just having no job description, having a job and not knowing what your duties are in that position. I think that was the first

most frustrating and defeating thing for me, after signing the agreement, is not knowing where I was or what I was doing. I'm a person who likes to have things set down for me, and there wasn't anything there.[10]

We find that the directions given plaintiff at the February 2, 1982 meeting must be viewed in the context of the circumstances which prompted the meeting to be held and that neither the conduct of the meeting nor the directions given plaintiff at that meeting can be said to reflect any discriminatory action on defendant's part that was in any way motivated by the fact plaintiff was a female employee. Accordingly, we find that plaintiff failed to carry the burden of proof under the greater weight of the credible evidence in regard to her Title VII claim alleged in Count I of her complaint.

Plaintiff argued on page 13 of her post-trial brief in support of her Count II Title VII retaliation claim that "Plaintiff was denied promotional opportunities, wages and benefits because of having asserted her rights under the Act." Aside from plaintiff's assertion that "her every move was documented and no one else's was," plaintiff's post-trial brief makes no reference to any specific factual data to support her Title VII retaliation claim.

Plaintiff did propose a number of findings of fact in paragraph 31(a) to (j) of her proposed findings of fact. Many of those proposed findings of fact, however, related to conduct which allegedly occurred before the settlement of her earlier EEOC claim. We find in regard to those portions of the paragraph 31 of plaintiff's proposed findings of fact which allegedly occurred after the execution of the August 10, 1981 settlement agreement that plaintiff has failed to carry the burden of proving that any of those alleged actions reflected any retalia-

---

**10.** Plaintiff further testified on deposition that "I kept writing memos and saying, 'What am I responsible for?' It was unclear" (Pl's Depo. p. 73) and that "I wrote memos to Ken and David, saying, 'Can I please get one job description that I can go by?' I felt that this was discriminatory

...." (*Id.*, p. 74). Plaintiff's trial testimony was consistent with that given in her deposition and reflected the importance that plaintiff attributed to having a job description in a form that would meet her approval.

tory discriminatory action on the part of the defendant. The evidence, of course, did establish that Mary Parker, the Police Department's receptionist, did keep a record of when plaintiff arrived for work and how much time she spent at lunch from the dates on some days in the months of May and June, 1982 and during the months of September to December of the same year. (Exh. 40).

Neither that exhibit nor any other credible evidence adduced at trial can be said to support paragraph 31(a) of plaintiff's proposed finding of fact that "Mary Parker, an employee of defendant's Police Department, has kept written records of plaintiff's every move and has not done so for any other employee." We find that there is no evidence that Mary Parker acted at the direction of anyone with authority or that Mary Parker's action was prompted by the fact plaintiff was a female or in retaliation for her filing an EEOC charge.[11]

The findings of fact proposed in support of plaintiff's Count II Title VII retaliation claim reflects a substantial overlap with those proposed in support of plaintiff's Count I Title VII claim. For example, paragraph 31(h) of plaintiff's proposed findings of fact reiterates plaintiff's complaint that she may have been given "different job descriptions" and about having been told "to work within her job description." The findings of fact made in regard to plaintiff's Count I Title VII claim are therefore relevant to plaintiff's Count II Title VII retaliation claim and are therefore to be so considered.[12]

We find as an ultimate fact that plaintiff has failed under the greater weight of credible evidence to carry the burden of proving that defendant acted in any retaliatory discriminatory manner in violation of Title VII as alleged in Count II of plaintiff's complaint.

IV.  CONCLUSIONS OF LAW

The conclusions of law proposed by the parties, plaintiff's in more detail than defendant's, directed our attention to the leading Supreme Court Title VII cases of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Our attention was also directed to the Supreme Court's leading Equal Pay Act case, *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Numerous progeny of both lines of the Supreme Court cases, decided by the Eighth Circuit and elsewhere are also cited, particularly in plaintiff's proposed conclusions and in her post-trial brief.

It is neither necessary nor helpful that we discuss the cited cases in any detail. This combined Title VII and Equal Pay Act case, like most of such cases that go to trial, must be determined by its particular factual circumstances as established by the

---

**11.** It is to be further noted that there is no evidence that Mary Parker kept any record of when plaintiff reported for work or the length of her lunch hours until May, 1982, two months after plaintiff had filed her current EEOC charge in March of that year. Although it is not necessary that we make any finding of fact in regard to that matter, plaintiff's January 14, 1982 memorandum to the then Acting Chief of Police, which registered a formal complaint about Mary Parker's "Phonemanship Techniques" in regard to how Parker handled telephone calls directed to plaintiff, may have marked the beginning of a sharp personality

conflict between plaintiff and Mary Parker which continued throughout the year 1982.

**12.** We have not overlooked defendant's crossfire admission of paragraph 31(b) of plaintiff's proposed findings of fact which stated that: "An employee of defendant's Police Department said to plaintiff's fellow employees that they should grab her by her ass and bring her into an office." We find that the admitted fact that such employee made such a statement is not sufficient evidence to support an ultimate finding of fact that defendant violated Title VII as alleged either in Count I or as alleged in Count II of plaintiff's complaint.

greater weight of the credible evidence rather than by the resolution of disputed questions of law.

It must further be noted that both sides were given a full and fair opportunity to present their evidence. The Eighth Circuit in *Jones v. International Paper Company, et al.,* 720 F.2d 496 (8 Cir.1983), appropriately noted that principles stated in the Supreme Court's recent decision in *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), in regard to the traditional *McDonnell Douglas* prima facie framework are applicable to a case fully tried on the merits. *See* also *Talley v. United States Postal Service,* 720 F.2d 505 (8th Cir.1983).

Accordingly we need state only the following conclusions of law in our determination of this case:

1. Jurisdiction of this Court is proper pursuant to 28 U.S.C. Sections 1331, 1343(a)(4) and Title VII of the 1964 Civil Rights Act, 42 U.S.C. Section 2000e–5(f).

2. Venue is proper in the Western District of Missouri. 28 U.S.C. Section 1391(b) and 42 U.S.C. Section 2000e–5(f)(3).

3. All administrative prerequisites to plaintiff's actions have been met and her complaint was timely filed.

4. Title VII of the Civil Rights Act makes it unlawful to discriminate against an employee on the basis of her/his sex or to take retaliation action against an employee who has asserted her/his rights under the Act. 42 U.S.C. Section 2000e–2(a) and 42 U.S.C. Section 2000e–3(a).

5. The Equal Pay Act prohibits employers from paying female employees lower wages than those paid to males for equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions. 29 U.S.C. Section 206(d)(1) 1976.

6. Under the findings of fact above stated, it is established that the work performed by plaintiff in her position as Operations Support Supervisor did not involve substantially equal duties to that performed by Captain Underwood or by the Public Information Officer Oakley; nor did plaintiff's work involve equal skill, effort and responsibility. Therefore, we conclude that there is no violation of the Equal Pay Act as alleged in Count III of plaintiff's complaint. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Horner v. Mary Institute,* 613 F.2d 706 (8 Cir.1980); *Katz v. School District of Clayton, Mo.,* 557 F.2d 153 (8th Cir.1977).

7. Under the findings of fact above set forth, we conclude that plaintiff has failed to sustain her burden of proving any violation of Title VII or any instance of retaliation as alleged in Counts I and II of plaintiff's complaint. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

8. We therefore conclude that defendant is entitled to judgment and to recover its costs.

For the reasons stated, it is

ORDERED (1) that defendant's motion to dismiss Count III of plaintiff's complaint should be and the same is hereby denied. It is further

ORDERED (2) that the Clerk, pursuant to Rule 58 of the Federal Rules of Civil Procedure shall enter judgment for the defendant and against the plaintiff on Counts I, II, and III of plaintiff's complaint.