**Mariano ROBLES, Plaintiff,**

v.

**Terrence GOLDEN, Director, General Services Administration, Defendant.**

**No. 85 Civ. 8117 (JMC).**

United States District Court,
S.D. New York.

Aug. 26, 1986.

Klein, Wagner & Morris, New York City (Helaine Balsam, of counsel), for plaintiff.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., New York City (David R. Lewis, Asst. U.S. Atty., of counsel), for defendant.

CANNELLA, District Judge:

Following a nonjury trial on the merits, the Court finds in favor of defendant. Fed. R.Civ.P. 52(a).

## BACKGROUND

Plaintiff Mariano Robles brings this action pursuant to 42 U.S.C. §§ 2000e–5(f)(3), 2000e–16(c), alleging discrimination on the basis of race. Many of the facts and conclusions of law are undisputed.[1] In late 1984, Robles, an hispanic male, was an employee of the General Services Administration ["GSA"] at 26 Federal Plaza, and had been so employed since May 31, 1977. His most recent position was that of Air-Conditioning Equipment Operator, carrying a rating of WG–12. This was a nonsupervisory position. In June and July 1984 two vacancies became available for the position of Maintenance Foreman, which carries the grade of WS–10. These are supervisory positions at a higher level than Mr. Robles's current job.

Mr. Robles was an unsuccessful applicant for these two positions. Robles is an hispanic male. The positions were filled by two white males. Eight males, including plaintiff, submitted applications for the positions. One was found not to be a GSA employee and thus not entitled to apply. Of the seven eligible applicants, five were white and two were hispanic.

In accordance with paragraph 11 of the GSA Merit Promotion Plan in effect at the time, the Personnel Division assembled an Evaluation Panel to consider the applications of the seven applicants. Two were found to be not qualified and the remaining five to be "best qualified". Three of the

1. *See* Joint PreTrial Order, 85 Civ. 8117 (JMC) (dated May 6, 1986).

**16**

five were graded above an arbitrary cutoff and two were below. However, the two with lower scores, Michael Rufano and Joseph Witkowski, were considered because their scores were very close to the higher three.

On September 19, 1984, the names and applications of the five persons found to be "best qualified" were referred to the GSA's Office of Public Buildings & Real Property ["OPBRP"] for the Federal Plaza Field Office. The Personnel Division did not forward to OPBRP any information or evaluations generated by the Evaluation Panel, other than the fact that each of the five applicants had been found "best qualified".

In accordance with paragraph 14 of the Merit Promotion Plan, Buildings Manager Frank J. Carbone, who is in charge of the Buildings Management Division with OPBRP, conducted interviews with each of the five candidates. Roger L. Fudge, Building Manager at 26 Federal Plaza, was also present at each interview. Lawrence Sausa, a Maintenance Foreman at 26 Federal Plaza, attended some of the interviews, including that of Robles.

On October 5, 1984, Carbone selected Arnold F. Reuter and Joseph Witkowski to fill the two vacancies. That selection received final approval from the GSA shortly thereafter.

Numerous legal conclusions have been agreed on by the parties. These will be discussed below. The only issue presented for trial was whether plaintiff could prove that the nondiscriminatory reasons given by defendant for not selecting plaintiff were mere pretexts for racial discrimination.

The nondiscriminatory reasons put forth by defendant are twofold: first, plaintiff did not have adequate training in carpentry and the electrical trades, which were the skills most needed; and second, plaintiff did not demonstrate sufficient supervisory experience or ability. Plaintiff argues that his HVAC engineering skills were equally important to the job and that he did have supervisory experience.

2.  Joint Exhibit (Jx)–D.

### FINDINGS OF FACT

During the relevant time period the OPBRP was organized as follows. Directly below Frank Carbone were three managers, one of whom, Roger Fudge, was solely responsible for Maintenance Operations. Maintenance Operations encompassed all of the "skilled trades" at Federal Plaza, including: (1) air conditioning equipment operators ["HVAC engineers"]; (2) electricians; (3) carpenters; (4) plumbers; (5) one locksmith; and (6) sometimes painters. Reporting to Mr. Fudge were four foremen. One foreman was Lawrence Sausa, the Air-Conditioning Equipment Operations Foreman, WS–11. The other trades were supervised by two Maintenance Foremen, WS–10, and one Assistant Maintenance Foreman, WS–9. Robles applied for the position of Maintenance Foreman.

The announcements for the positions, written by the personnel department, describe the duties, in relevant part, thus:

> Supervises the work of programmed projects and service type repairs and inspects work of various craft subordinates.... Inspects the work of contractors working on service type contracts, i.e., elevator service, preventive maintenance, or repair of control systems, including fire alarm systems. Is responsible for overall conditions, performing inspections, making tests, performance of maintenance and repairs on building structures, mechanical and electrical systems and related components....[2]

This was a general job description. It did not address the particular skills that were needed given the current make-up of the staff.

To determine the particular needs, Carbone consulted with his technical employees, Fudge and Sausa, who reported that Maintenance Operations required the new maintenance foremen to have strong backgrounds in carpentry and/or electrical work. Sausa, the Air-Conditioning Operations Foreman, already had supervisory ex-

pertise in that area. Carpentry and the electrical trades were the two other major trades, neither of which was adequately covered by current supervisory staff. Additionally, it was determined that supervisory experience and ability were primary criteria for the job.

Plaintiff argues that the written reports of the personnel department, which were quite favorable to plaintiff, should have been forwarded to Carbone. Gino V. Combi, the chief of the GSA's employment and training branch, testified, however, that it would have been improper to forward these files to Carbone because the records contained references to scores which were for personnel use only. Thus, the agency intended that final hiring decisions result from a de novo review by the supervising staff member.

The Court finds credible the testimony of Carbone, Fudge and Sausa concerning the procedures by which the interviews were conducted. The questions were focused on each applicant's experience and knowledge in the relevant fields, i.e., carpentry and electrical skills, as well as on the applicant's experience and potential as a supervisor.

The two men who were selected had stronger qualifications in each of these areas than plaintiff. Mr. Reuter was a carpenter by trade, complemented by substantial experience in other trades. He had owned his own small contracting business prior to working at 26 Federal Plaza and more recently had held the position of Assistant Maintenance Foreman at Federal Plaza. During the months prior to his interview, Maintenance Operations had been shorthanded due to the loss of the two Maintenance Foremen. As a result, both Fudge and Carbone had an opportunity to observe Reuter's considerable supervisory capabilities.

Mr. Witkowski was a licensed electrician who, during his tenure at Federal Plaza, had been temporarily assigned to a major construction project at Lefrak City. During the construction phase of that project, he temporarily held the position of Project Foreman, a supervisory position. He supervised a staff of skilled tradesmen in the construction of walls, ceilings, etc., and the placement of electrical systems and plumbing and piping systems. He completed this major project ahead of schedule.

Plaintiff does not seriously dispute these qualifications, except to suggest that Carbone may not have had much firsthand knowledge or memory of the applicants' supervisory qualifications. Both Carbone and Fudge had personally observed Reuter on the job, however, and stated that their prior knowledge was an important factor in their decisions. Moreover, their testimony suggests that both had quite detailed knowledge of Witkowski's work at Lefrak City. Plaintiff's argument is entirely without basis.

Robles's qualifications are not disputed for the most part. It is acknowledged that he is an extremely competent HVAC engineer. Robles himself did not strongly argue that he had substantial skills in other trades. He claimed that he had done a little electrical work and minimal carpentry such as changing locks. He testified concerning several brief temporary appointments he had held, which were supervisory in nature. Carbone, Sausa and Fudge, who were present at plaintiff's interview all testified that plaintiff did not stress his supervisory abilities at the interview. In fact, Sausa was so unimpressed with what he learned at the interview concerning plaintiff's supervisory skills that he changed his previously more favorable opinion in this regard. It is apparent that plaintiff, confident of getting the job, failed to adequately present whatever qualifications he had.

Plaintiff principally argues that defendant has concocted his claim that carpentry and electrical skills were considered more important than HVAC skills, in order to fit the two men who were hired. He argues that of the 29 tradesmen working at 26 Federal Plaza, 14 were HVAC engineers. He infers from this that HVAC skills would be helpful to a supervisor. This argument ignores the fact that the supervisory staff already included a foreman with HVAC skills—Mr. Sausa. In any event, the Court declines to second-guess the GSA

supervisory staff's opinion as to what they needed on the job. Plaintiff's argument that an HVAC engineer was more necessary than a carpenter or electrician is relevant only to the extent that it reflects on the subjective views held by Carbone, Fudge and Sausa. Having observed the demeanor of the witnesses on the stand, the Court finds that these three men actually believed that an electrician and carpenter were more valuable to their needs.

Plaintiff also raises the fact that of the 15 individuals working for the GSA in the WS–10 and WS–11 positions, all but one were white males. The Court finds that this statistic does not reflect on the thinking of Carbone, Fudge or Sausa and is thus irrelevant.

Plaintiff contends that Fudge was inherently prejudiced against minorities as evidenced by his remark that "My experience indicates that a number of minorities don't seem to want to put in for supervisory positions."[3] Plaintiff ignores the end of the sentence, which states: "[H]owever, I know we lost two good minority mechanics from this building through promotions." Moreover, Robles does not dispute that Fudge repeatedly assisted Robles in his career with the GSA and held a high opinion of him as an HVAC engineer.

## CONCLUSIONS OF LAW

The legal standards required in Title VII cases are well established and need not be detailed here. *See, e.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). It is undisputed that plaintiff has established a prima facie case because he is hispanic, met the basic job qualifications set by the personnel department and was rejected in favor of a nonhispanic. It is also undisputed that defendant has met his burden of articulating legitimate nondiscriminatory reasons for rejecting plaintiff.

Thus, the burden is on plaintiff to prove by the fair preponderance of the credible evidence that defendant's proffered reasons for rejecting plaintiff are mere pretexts for discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas v. Greene,* 411 U.S. at 804–05, 93 S.Ct. at 1825. The plaintiff may prove discrimination "either directly by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also United States Postal Serv. v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

The Court finds that plaintiff has not succeeded in establishing his case either by direct proof or indirect proof. There is no direct evidence of discriminatory intent and the Court finds defendant's proffered explanations for rejecting plaintiff to be credible for the reasons outlined above.

## CONCLUSION

For the foregoing reasons, the Court finds for the defendant. Fed.R.Civ.P. 52(a). The Clerk of the Court is directed to enter judgment dismissing the complaint.

SO ORDERED.