803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ECILA R. TUCK, Plaintiff-Appellant
v.
THE HOOVER COMPANY, Defendant-Appellee.
 No. 85-3748.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1986.
 
 BEFORE: JONES and NELSON, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff in this employment discrimination action is appealing the district court's summary judgment entered in favor of the defendant, the Hoover Company ("Hoover"). Hoover is requesting an award of attorneys' fees and costs incurred on this appeal on the grounds that plaintiff's appeal is frivolous and unmeritorious. We affirm the district court's order and deny Hoover's request for an award of fees and costs.
 
 I.
 
 2
 Plaintiff Ecila Tuck was hired by Hoover on October 1, 1971 as a clerk-typist. On or about October 25, 1982, Hoover posted a notice of an opening for an executive secretary to the Vice-President of the Engineering and Manufacturing Division. Shortly thereafter Tuck submitted a bid for the opening. Seventeen other Hoover employees submitted bids for the opening. Tuck was the only black applicant.
 
 
 3
 Sometime after the bids had been submitted, Steven LeClerc, Hoover's personnel counsellor and administrator, decided to limit the number of interviews for the position to six bidders from the Engineering and Manufacturing and Worldwide Divisions of Hoover. In an affidavit, LeClerc stated that he did so in order "to avoid the necessity for . . . the Vice President of Engineering and Manufacturing, to interview so many persons." He added that he chose to limit the interviews to the bidders from the two divisions even though "the job posting did not include such a restriction." He also stated that he limited interviews to bidders from those two divisions "because secretaries working in those divisions were considerably more likely to be familiar with the technical procedures and terminology with which [the Vice President] and his executive secretary would be involved."
 
 
 4
 Tuck was not chosen for an interview because she was not employed in either of the eligible divisions. A white woman, Mary Beth Wilson, from the Worldwide Division, eventually received the job. Following the rejection of her bid, Tuck filed a complaint with the Ohio Civil Rights Commission. After an investigation, the Commission concluded that Hoover had not engaged in any unlawful practices. The Equal Employment Opportunity Commission eventually adopted the Commission's findings. On March 1, 1984, the EEOC issued a right to sue letter. On June 1, 1984, Tuck filed suit against Hoover in federal district court, alleging that Hoover had violated a number of statutes and constitutional provisions.
 
 
 5
 Tuck's complaint alleged that Hoover discriminated against her because of her race with respect to compensation and promotion. She alleged that Hoover had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et. seq. (1982), Title VI of that Act, 42 U.S.C. Sec. 2000d et. seq. (1982), 42 U.S.C. Secs. 1981, 1985(3), and 1988 (1982), and the Thirteenth and Fourteenth Amendments to the United States Constitution.
 
 
 6
 Both parties moved for summary judgment pursuant to Fed. R. Civ. P. 56. In a memorandum and order, the district court granted Hoover's motion and dismissed all of Tuck's claims.
 
 
 7
 On appeal Tuck concedes that all of her claims, except for her Title VII and Sec. 1981 claims, were properly dismissed by the district court.
 
 II.
 
 8
 Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 2000e-2 (1982). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court set forth the elements necessary for a plaintiff to establish a prima facie case of employment discrimination. The plaintiff must establish: (i) that she belongs to a racial minority; (ii) that she applied for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802.
 
 
 9
 Once a plaintiff has succeeded in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The burden placed on the defendant at this point is "the burden of going forward with admissible evidence of a legitimate, nondiscriminatory reason for not promoting the plaintiff[]." Sones-Morgan v. Hertz Corp., 725 F.2d 1070, 1072 (6th Cir. 1984). If the defendant carries that burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." 450 U.S. at 253. The burden of persuasion at all stages of this process remains with the plaintiff. 450 U.S. at 253.
 
 
 10
 Once the third stage of Burdine is reached, i.e. after the defendant has failed to persuade the district court that the plaintiff has not established a prima facie case and has produced evidence of the reasons for rejecting the plaintiff, "the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII." U.S. Postal Service Board of Governors v.Aikens, 460 U.S. 711, 714-715 (1983).
 
 
 11
 A slightly different test may be used where a plaintiff is challenging discriminatory treatment during his or her employment. A plaintiff may establish a prima facie case by showing (1) that she was a member of a racial minority; (2) that she and a similarly situated white person received dissimilar treatment; and (3) that sufficient evidence exists from which the court can find a causal connection between race and the alleged acts of the defendant. Nichelson v. Quaker Oats Co., 573 F. Supp. 1209, 1219 (W.D. Tenn. 1983), rev'd on other grounds, 752 F.2d 1153 (6th Cir. 1985), vacated 105 S. Ct. 2696 (1985).
 
 
 12
 The district court applied this model to Tuck's claim that she had been paid less than her white counterparts doing the same job and concluded that she had failed to establish a prima facie case. A review of the record indicates that the court reached the correct conclusion. The record contains no evidence that Tuck was ever paid less than similarly situated white employees. Additionally, Tuck, in her own deposition, admitted that her allegations were based on hearsay and conjecture.
 
 
 13
 The district court also properly applied the McDonnell Douglas - Burdine analysis to Tuck's claim that she was denied a promotion for discriminatory reasons. The court concluded that Tuck had failed to establish a prima facie case because 1) she failed to show that she was qualified by being an employee of the two eligible divisions and 2) the position did not remain open after her rejection. The district court added that even if Tuck had established a prima facie case, it would still have to grant Hoover's motion for summary judgment because Hoover had articulated a non-discriminatory reason for interviewing applicants from only two divisions and choosing a white employee from one of those divisions and Tuck had produced no evidence showing that Hoover's articulated reasons were mere pretext for race discrimination.
 
 
 14
 The district court applied the law correctly and reached the proper conclusion. Tuck's case failed because she was unable to establish that Hoover's reasons for not promoting her were not legitimate and nondiscriminatory. Once the district court deemed that Hoover had articulated a legitimate, nondiscriminatory reason for not promoting Tuck, the burden fell on her to persuade the court that Hoover's stated reasons were a pretext for race discrimination. Tuck, however, failed to come forward with proper evidence. Instead, she chose to rest on her pleadings. Thus there were no genuine issues of material fact, and when Hoover moved for summary judgment the district court was obliged to grant it. Disposition under Rule 56 was appropriate under the circumstances. As this Court noted in Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (1974), "when the movant brings forward and supports his motion for summary judgment, his opponent may not rest merely upon his pleadings, but rather must come forward to show genuine issues of fact. Mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden."
 
 IV.
 
 15
 Hoover is seeking to recover its attorneys' fees and costs related to this appeal on the grounds that Tuck's appeal is frivolous and unmeritorious. Rule 38 of the Federal Rules of Appellate Procedure provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Fed. R. App. P. 38.
 
 
 16
 Before a court of appeals can award an appellee attorneys' fees or costs, it must first establish that the appellant's appeal was frivolous. The record indicates that Tuck's appeal was not frivolous. The fact that she satisfied at least the first two steps of the McDonnell Douglas test, i.e., she is a member of a minority group and she did apply for a job for which the employer was seeking applicants, and the fact that the qualifications for the job were changed after she applied for it, suggest, at the very least, that she reasonably thought she had a colorable claim against Hoover. Therefore, it was reasonable for her to appeal the district court's dismissal of her complaint. Although Tuck's case may have been weak, it was not frivolous. A court should grant attorneys' fees and other costs to a prevailing defendant or appellee in a Title VII action only in the most extreme circumstances lest it discourage persons from acting to protect their rights.
 
 
 17
 Therefore, the district court's summary judgment is AFFIRMED and Hoover's request for attorneys' fees and costs is denied.