**Cecil D. HOWZE, Sr., Plaintiff,**

**v.**

**Robert McCormick ADAMS, Defendant.**

**Civ. A. No. 86–3021–LFO.**

United States District Court,
District of Columbia.

June 29, 1988.

Michael L. Spekter, Washington, D.C., for plaintiff.

Wilma A. Lewis, Asst. U.S. Atty., Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

OBERDORFER, District Judge.

On March 30, 1988, at the conclusion of the evidence, the Court granted defendant's motion for summary judgment for reasons stated from the bench. At that time, the Court requested defendant to prepare proposed findings which reflected that ruling and those reasons. Defendant has submitted these proposed findings to plaintiff, who has indicated that he has no objection. The Court has reviewed defendant's proposal and finds that it fairly reflects the Court's ruling from the bench and the evidence that has been adduced in this case. Accordingly, they are adopted and here published:

### I. FINDINGS OF FACT

#### A. *Background*

1. Plaintiff, Cecil D. Howze, Sr., a black male, is a Sheetmetal Mechanic in the Sheetmetal Shop, Office of Plant Services, Smithsonian Institution, in Washington, D.C. (Testimony of Cecil Howze). Mr. Howze has been employed in this capacity with the Smithsonian Institution since 1963. (Joint Stipulation ("J.S.") at ¶ 3 (Joint Exhibit 1)).

2. The Smithsonian's Office of Plant Services provides a full range of support services for the physical plant of the institution, including building maintenance, construction, utilities, services, repairs and other operations needed. (J.S. at ¶ 1).

3. The Sheetmetal Shop is a branch of the Office of Plant Services employing approximately 7 journeyman Sheetmetal Mechanics and 1 Sheetmetal Mechanic Foreman. (J.S. at ¶ 2).

4. In March 1976, plaintiff filed a formal complaint of discrimination on the basis of age and race concerning, *inter alia,* his work assignments and his failure to be promoted to the position of Assistant Foreman in the Sheetmetal Shop. (J.S. at ¶ 11; Defendant's Exhibit ("Def. Exh.") 16).

5. A finding of no discrimination concerning the 1976 complaint was issued on May 2, 1979, and this decision was sustained on appeal by the Equal Employment Opportunity Commission on November 25, 1980. (J.S. at ¶ 12; Def. Exhs. 14, 15). No further appeal of this matter was taken. (Testimony of Cecil Howze).

6. On June 4, 1982, plaintiff filed an administrative complaint alleging that he had been denied certain training opportunities and job assignments and that he had not been selected for the position of Foreman of the Sheetmetal Shop because of his race.

7. On October 2, 1986, following investigation of plaintiff's complaint and a hearing before an Equal Employment Opportunity Commission Hearing Examiner who found no discrimination, defendant issued a final decision finding no discrimination.

8. Plaintiff filed a complaint in this Court on November 3, 1986, alleging race and age discrimination based on the allegations set forth in his June 4, 1982 administrative complaint. The age discrimination claim was dismissed by this Court in response to defendant's unopposed motion to dismiss for lack of subject matter jurisdiction. The race discrimination claim was tried before this Court from March 28–30, 1988.

#### B. *The Merits*

9. Between 1975 and 1982, John A. Denbow was Foreman of the Sheetmetal Shop at the Smithsonian Institution. (J.A. at ¶ 4). Upon his retirement in January, 1982, the position of Foreman became vacant. (J.S. at ¶ 5).

10. The position of Sheetmetal Mechanic Foreman, WS–3806–10 was advertised under Merit Promotion Announcement 82–6–A from January 5, 1982 to January 19, 1982. (J.S. at ¶ 6; Def. Exh. 3). The Foreman is responsible for the general supervision of the sheetmetal mechanics in the Sheetmetal Shop; planning, coordination and inspection of work; training and technical instruction; personnel management; and other related duties. (Def. Exhs. 3, 4).

11. The plaintiff, Donald Elliott (white male) and Thomas Kenney (white male), all Journeymen Sheetmetal Mechanics in the

Office of Plant Services, applied, were found qualified by the Smithsonian Office of Personnel Administration, and were referred to the selecting official, William M. Adams (J.S. at ¶ 6; Def. Exh. 5).

12. As requested by the Agency, Mr. Denbow, the candidates' former supervisor who was then retired, submitted a Qualifications Analysis and Assessment of Potential for Supervisory Positions for the three candidates. (J.S. at ¶ 8; Testimony of William Adams; Def. Exh. 7). Mr. Denbow rated Mr. Elliott the highest of the three candidates. *Id.*

13. The selecting official, Mr. Adams, testified credibly that he rated the three candidates for the Foreman position in five areas: (1) Demonstrable experience in the sheetmetal trade relative to Smithsonian requirements; (2) Qualifications analysis and assessment of potential for supervisory positions; (3) Demonstrable past experience in a supervisory position; (4) Commendations and awards relative to trade ability; and (5) Personal interview. (Def. Exh. 6; Testimony of William Adams).

14. In evaluating the candidates, Mr. Adams reviewed and considered the Personal Qualifications Statements submitted by the candidates, their Official Personnel Files, and the qualifications analysis and assessment submitted by Mr. Denbow. Mr. Adams also conducted personal interviews of the three candidates. Based on his review and consideration of the foregoing materials and the results of the personal interviews, Mr. Adams concluded that Mr. Elliott was the best qualified candidate and selected him for the Foreman position. (Testimony of William Adams; Def. Exhs. 5–8, 10).

15. In comparing the plaintiff with Mr. Elliott, Mr. Adams determined that Mr. Elliott: (1) had more years of, and more extensive experience in the sheetmetal trade relative to Smithsonian requirements; (2) had been rated higher by Mr. Denbow on the qualifications analysis and assessment; (3) had more years of supervisory experience and over a greater number of sheetmetal employees; (4) had more letters of commendation; and (5) demonstrated a more thorough knowledge of the operation of the Sheetmetal Shop and its interrelationship with the Office of Plant Services. (Testimony of William Adams; Def. Exh. 6).

16. Of the three candidates, Mr. Elliott was rated as the top candidate in each of the five areas except supervisory experience, on which he was rated second. Mr. Howze was rated third in each of the five areas. (Testimony of William Adams; Def. Exh. 6).

17. Mr. Adams' selection of Mr. Elliott for the Foreman position was approved by the Smithsonian's Office of Equal Opportunity, and the Assistant Secretary for Administration in accordance with special procedures associated with selection decisions in "underrepresented" job categories. (Testimony of William Adams; Def. Exhs. 5, 17).

18. During his tenure at the Smithsonian Institution, Mr. Adams has been the selecting official for four supervisory positions. In two of the four instances, black candidates were among those referred to him by the Personnel Department, and in one of those two instances, Mr. Adams selected a black candidate. (Testimony of William Adams).

19. In support of his claims of discrimination, the plaintiff presented the testimony of Mr. William Hawkins, a black male sheetmetal mechanic who has been employed in the Sheetmetal Shop since October, 1980. (Testimony of William Hawkins). Although Mr. Hawkins testified favorably to the plaintiff on direct examination, particularly with respect to the alleged denial of job assignments and as to Mr. Howze's capabilities, no credence can be given to this testimony in light of Mr. Hawkins' earlier statements and testimony during the administrative processing of this case.

20. On October 5, 1982, Mr. Hawkins executed an affidavit in which he compared Mr. Elliott's capabilities with those of the plaintiff, Mr. Howze. In this affidavit, Mr. Hawkins stated that Mr. Elliott's work was "excellent;" that he was "a top-notch man in his trade;" and that he worked with

speed. In comparison, he stated that Mr. Howze's work "will pass." Mr. Hawkins further stated that "Mr. Elliott was the best man for the job; and he still is, regardless of his color." (Def. Exh. 25; Testimony of Mr. Hawkins).

21. During the 1985 administrative hearing, Mr. Hawkins reiterated his earlier comments. When asked if he had any "corrections, clarifications or amplifications" of his affidavit, he stated: "No, because it's telling the truth." (Def. Exh. 26 at 190). He also reiterated his belief that Mr. Elliott was the best person for the job. (*Id.* at 203).

22. Mr. Hawkins also noted in his 1982 affidavit that the "bad point" about Mr. Howze is that he takes his time to do his work. He further noted that this factor, coupled with Mr. Howze's union activity, did not allow him much time on the job. (Def. Exh. 25; Testimony of William Hawkins).

23. During the period 1978 through 1982, plaintiff served as a Vice President for AFGE Local 2463, the exclusive representative for bargaining unit employees at the Smithsonian Institution. (Testimony of Cecil Howze).

24. Mr. John Denbow, plaintiff's former supervisor, stated via his deposition testimony and affidavit that the plaintiff was often assigned to "service" or repair work which could be done individually, because he was often unavailable to work as a "team member" on more complex tasks, including duct work, and because he was slower in completing assignments than his coworkers. (Def. Exhs. 18 and 19).[1]

25. Mr. Denbow further stated that when he was out on leave, particularly during the last year before his retirement, he established a rotational policy whereby Messrs. Howze, Elliott and Kenney served as acting foreman during his absence. (Def. Exh. 19). This testimony is supported by the documentary evidence presented at trial. (Plaintiff's Exh. 12; Joint Exh. 2).

26. In evaluating the candidates for the Foreman position, both Mr. Elliott and Mr. Howze were given full credit for their years of service at the Smithsonian Institution. (Testimony of William Adams; Def. Exh. 6).

27. The plaintiff also presented the testimony of Mr. David Botts, a black male who is employed as a Foreman in the Utilities and Operations Branch at the Smithsonian Institution. (Testimony of David Botts). Mr. Botts, who did not work in the Sheetmetal Shop and who worked the midnight shift during the relevant period, had little familiarity with Mr. Howze's work, having had the opportunity to observe it on one, or at most two, occasions. (*Id.*) Further, Mr. Botts testified that he had received promotions into the supervisory ranks, and that Mr. William Adams, the alleged discriminating official here, would have had to approve his promotions. (*Id.*)

28. Plaintiff's claims of discrimination in the denial of training opportunities focused on two courses that Mr. Elliott was allegedly permitted to take and the plaintiff was allegedly denied—a course in the operation of a cherrypicker machine and a timekeeping course. (Testimony of Cecil Howze).

29. The testimony revealed that the cherrypicker course consisted of approximately twenty minutes of instruction, wherein Mr. Elliott was raised and lowered in the machine by another Smithsonian staff member. (Testimony of Donald Elliott). This course was subsequently cancelled. (*Id.; see also* Def. Exh. 19). Further, Mr. Elliott testified that he learned timekeeping from Mr. Denbow on the job. (Testimony of Donald Elliott).

30. Neither knowledge of the operation of a cherrypicker machine nor of timekeeping was considered by Mr. Adams in making the selection for the Foreman position. (Testimony of William Adams).

31. Plaintiff testified that he was subjected to hazing and inappropriate racial

---

1. Due to the grave illness of Mr. Denbow, the parties agreed that his deposition testimony and his affidavit prepared during the administrative phase could be offered in lieu of his live testimony.

remarks during his employment in the Sheetmetal Shop at the Smithsonian Institution. These included a comment allegedly made in 1963 by Mr. Harvey Drack, plaintiff's supervisor, that the plaintiff was hired to give a "salt and pepper" effect to the workplace and that he would not advance, and an "effigy" in the form of a sandbag mannequin with exaggerated features that was allegedly hung in the Sheetmetal Shop in December, 1981. (Testimony of Cecil Howze).

32. The supervisor to whom the "salt and pepper" comment was attributed left the Smithsonian Institution in the 1960's. Neither Mr. Adams nor Mr. Denbow had any involvement with the alleged comment. (Testimony of Mr. Howze).

33. Mr. Elliott, one of the employees who plaintiff claimed was involved with the "effigy," specifically denied the allegations. (Testimony of Donald Elliott). Further, Mr. Hawkins, plaintiff's witness, denied having any knowledge of, or having ever seen an effigy, although plaintiff testified that the effigy was hanging in the Sheetmetal Shop for more than one day. (Testimony of William Hawkins).

34. Plaintiff did not file any grievances in connection with the alleged hazing and inappropriate racial remarks. (Testimony of Cecil Howze).

## II. CONCLUSIONS OF LAW

1. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–16, *et seq.* prohibits discrimination on the basis of race, color, religion, sex or national origin. This Court has jurisdiction to adjudicate claims of discrimination against federal employees pursuant to 42 U.S.C. §§ 2000e–16(c).

2. In a case alleging disparate treatment under Title VII, the ultimate factual inquiry is whether the defendant intentionally discriminated against the plaintiff— that is, whether the defendant treated plaintiff less favorably than others because of his race, color, religion, sex or national origin. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d

403 (1983); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) *(Burdine); McKenzie v. Sawyer,* 684 F.2d 62, 70 (D.C.Cir.1982). To establish a claim of discrimination, the plaintiff must therefore prove discriminatory animus on the part of the defendant. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 14, 97 S.Ct. 1843, 1854, n. 14, 52 L.Ed.2d 396 (1977); *McKenzie v. Sawyer,* 684 F.2d at 70.

3. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) *(McDonnell Douglas )*, the Supreme Court set forth the allocation of burdens and order of presentation of proof in a Title VII case alleging disparate treatment. First, the plaintiff must prove by a preponderance of the evidence a *prima facie* case of discrimination. *Id.* at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. In a case alleging discriminatory failure to promote, the plaintiff must generally show that he (1) belongs to a protected group; (2) was qualified for a promotion; (3) was considered for and denied the promotion; and (4) that other employees of similar qualifications who were not members of the protected group were promoted at the time when plaintiff's request for promotion was denied. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). In short, plaintiff's evidence must be sufficiently strong to raise the inference that any differences in treatment were motivated by one of the prohibited factors. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McKenzie v. Sawyer,* 684 F.2d at 71.

4. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for its actions. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824; *McKenzie v. Sawyer,* 684 F.2d at 71. This burden is not one of persuasion. To sustain this burden, the employer need only introduce evidence from which the trier of fact could rationally

conclude that he was not motivated by discriminatory animus. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095.

5. Finally, in order to prevail, the plaintiff must then establish by a preponderance of the evidence that the defendant's stated reasons were simply a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp.,* 411 U.S. at 804, 93 S.Ct. at 1825; *McKenzie v. Sawyer,* 683 F.2d at 71. At this point in the order of proof, the plaintiff's burden merges with the ultimate burden of proving that he was a victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

6. Although the burden of production shifts between the plaintiff and defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff throughout the entire case. *Burdine,* 450 U.S. at 253, 255–56, 101 S.Ct. at 1094–95; *McKenzie v. Sawyer,* 684 F.2d at 71.

7. A plaintiff cannot meet his ultimate burden of proof by simply showing that the agency's decision, although not based on a prohibited factor under the Act, was reached in violation of federal personnel law. Instead, discriminatory motive is critical. *See Johnson v. Lehman,* 679 F.2d 918 (D.C.Cir.1982).

8. Plaintiff claims that he was not selected for the position of Foreman of the Sheetmetal Shop because of his race. However, the evidence fails to support this claim.

9. Plaintiff has established a *prima facie* case of discrimination in that he belongs to a protected group, was qualified for the position, was considered for and denied promotion to the position, and another employee not of the protected group was selected.

10. Defendant has, however, articulated legitimate nondiscriminatory reasons for the selection of Mr. Elliott for the Foreman position. Mr. Adams testified credibly that five factors were used in evaluating the candidates, and that Mr. Elliott

ranked higher than the plaintiff in each of the five areas. Particularly compelling is the fact that Mr. Elliott had ten years of experience supervising ten or more sheetmetal mechanics, while plaintiff had only five years of experience supervising one employee in the sheetmetal trade and other experience supervising laborers and storekeepers. In addition, Mr. Adams testified credibly that Mr. Elliott's knowledge of the operation of the Sheetmetal Shop and its interrelationship with the Office of Plant Services, as demonstrated during his personal interview, was superior to that of the plaintiff, as demonstrated in his personal interview.

11. Moreover, the evidence is clear that Mr. Adams did not discriminate against blacks in selections for promotions to supervisory positions. Mr. Adams selected a minority candidate in one of two instances in which minority candidates were referred to him by the Office of Personnel. In addition, Mr. Botts, plaintiff's witness, testified that his promotions to the supervisory level would have had to be approved by Mr. Adams.

12. The alleged differences in training opportunities and assignments cited by the plaintiff were insufficient to explain the differences in the respective abilities of the plaintiff and Mr. Elliott, given plaintiff's nineteen-year tenure as a journeyman at the Smithsonian Institution. Further, the assessment of Mr. Howze as being relatively slow in the performance of his job as compared with his fellow workers, often away from the worksite, and a less capable worker than Mr. Elliott, was corroborated by plaintiff's own witness, Mr. William Hawkins.

13. Moreover, there was no proximate relationship between the alleged denial of training and assignments and plaintiff's nonselection for the Foreman position. Neither knowledge of how to operate the cherrypicker machine nor of timekeeping was considered by Mr. Adams in making the selection. Further, both the plaintiff and Mr. Elliott received full credit for their

entire tenure at the Smithsonian Institution.

14. Mr. Adams' selection of Mr. Elliott for the Foreman position was further supported by the admissions made by plaintiff's witness, Mr. Hawkins, in his affidavit and testimony at the administrative hearing. Mr. Hawkins stated unequivocally that Mr. Elliott's work performance was superior to that of the plaintiff and that Mr. Elliott was the best person for the Foreman job.

14. Plaintiff testified that he was subjected to hazing and inappropriate racial remarks during his employment in the Sheetmetal Shop. There is conflicting evidence on this issue. In any event, even assuming that these actions occurred, the plaintiff did not establish a proximate relationship between this alleged treatment and the promotion at issue.

15. Plaintiff failed to present evidence to support his allegation that Mr. Adams' reasons for selecting Mr. Elliott were pretextual.

16. Based on the entire record herein, and specifically because of defendant's articulation of legitimate, nondiscriminatory reasons for plaintiff's nonselection which were not shown to be pretextual, the plaintiff has failed to prove by a preponderance of the evidence that this nonselection for the position of Foreman of the Sheetmetal Shop resulted from race discrimination.

## ORDER

On March 30, 1988, at the conclusion of the evidence at trial, defendant moved for summary judgment. For reasons stated from the bench and recited in the Findings of Fact and Conclusions of Law filed herewith, it is this 28th day of June, 1988, hereby

ORDERED: that defendant's motion for summary judgment should be and is hereby GRANTED; and it is further

ORDERED: that the complaint should be and is hereby DISMISSED.