# UNITED STATES POSTAL SERVICE BOARD OF
# GOVERNORS *v.* AIKENS

No. 81–1044.   Argued November 9, 1982—Decided April 4, 1983

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined. BLACKMUN, J., filed a concurring opinion, in which BRENNAN, J., joined, *post*, p. 717. MARSHALL, J., concurred in the judgment.

*Deputy Solicitor General Wallace* argued the cause for petitioner. With him on the brief were *Solicitor General Lee, Assistant Attorney General McGrath*, and *Marleigh D. Dover*.

*Jack Greenberg* argued the cause for respondent. With him on the brief were *L. Harold Aikens, Jr., James M. Nabrit III, Charles Stephen Ralston, Clyde E. Murphy, Gail J. Wright*, and *Barry L. Goldstein.** 

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Louis Aikens filed suit under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, claiming that the United States Postal Service discriminated against him on account of his race. Aikens, who is black, claimed that the Postal Service had discriminatorily refused to promote him to higher positions in the Washington, D. C., Post Office where he had

---

*Briefs of *amici curiae* urging reversal were filed by *Stephen A. Bokat* for the Chamber of Commerce of the United States; and by *Robert E. Williams, Douglas S. McDowell*, and *Edward E. Potter* for the Equal Employment Advisory Council.

Briefs of *amici curiae* urging affirmance were filed by *Joan E. Bertin, Mary L. Heen, E. Richard Larson*, and *Isabelle Katz Pinzler* for the American Civil Liberties Union et al.; and by *James E. Daniels, Paul A. Crotty*, and *Phyllis N. Segal* for the NOW Legal Defense and Education Fund et al.

*J. Albert Woll, Robert M. Weinberg, Michael H. Gottesman*, and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae*.

been employed since 1937. After a bench trial, the District Court entered judgment in favor of the Postal Service, but the Court of Appeals reversed. 206 U. S. App. D. C. 109, 642 F. 2d 514 (1980). We vacated the Court of Appeals' judgment and remanded for reconsideration in light of *Texas Department of Community Affairs* v. *Burdine,* 450 U. S. 248 (1981). 453 U. S. 902 (1981).

On remand, the Court of Appeals reaffirmed its earlier holding that the District Court had erred in requiring Aikens to offer direct proof of discriminatory intent. It also held that the District Court erred in requiring Aikens to show, as part of his prima facie case, that he was "as qualified or more qualified" than the people who were promoted. 214 U. S. App. D. C. 239, 240, 241, 665 F. 2d 1057, 1058, 1059 (1981) *(per curiam).* We granted certiorari.[1] 455 U. S. 1015 (1982).

The Postal Service argues that an employee who has shown only that he was black, that he applied for a promotion for which he possessed the minimum qualifications, and that the employer selected a nonminority applicant has not established a "prima facie" case of employment discrimination under Title VII. Aikens argues that he submitted sufficient evidence that the Postal Service discriminated against him to warrant a finding of a prima facie case.[2] Because this case

---

[1] We have consistently distinguished disparate-treatment cases from cases involving facially neutral employment standards that have disparate impact on minority applicants. See, *e. g., Texas Department of Community Affairs* v. *Burdine,* 450 U. S. 248, 252, n. 5 (1981); *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 802, n. 14 (1973).

[2] Aikens showed that white persons were consistently promoted and detailed over him and all other black persons between 1966 and 1974. Aikens has been rated as " 'an outstanding supervisor whose management abilities were far above average.'" App. 8. There was no derogatory or negative information in his personnel folder. He had more supervisory seniority and training and development courses than all but one of the white persons who were promoted above him. He has a master's degree and has completed three years of residence towards a Ph. D. Aikens had substan-

was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non*.[3]

By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable "presumption that the employer unlawfully discriminated against" him. *Texas Department of Community Affairs* v. *Burdine, supra,* at 254. See *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792 (1973). To rebut this presumption, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine,* 450 U. S., at 255. In other words, the defendant must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.,* at 254.

But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case,[4] and re-

---

tially more education than the white employees who were advanced ahead of him; of the 12, only 2 had any education beyond high school and none had a college degree. He introduced testimony that the person responsible for the promotion decisions at issue had made numerous derogatory comments about blacks in general and Aikens in particular. If the District Court were to find, on the basis of this evidence, that the Postal Service did discriminate against Aikens, we do not believe that this would be reversible error.

[3] As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves. Thus, we agree with the Court of Appeals that the District Court should not have required Aikens to submit direct evidence of discriminatory intent. See *Teamsters* v. *United States,* 431 U. S. 324, 358, n. 44 (1977) ("[T]he *McDonnell Douglas* formula does not require direct proof of discrimination").

[4] It appears that at one point in the trial the District Court decided that Aikens had made out a prima facie case. When Aikens concluded his case in chief, the Postal Service moved to dismiss on the ground that there was no prima facie case. Tr. 256. The District Court denied this motion. *Id.,* at 259. See App. to Pet. for Cert. 47a.

sponds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," 450 U. S., at 255, n. 10, and "the factual inquiry proceeds to a new level of specificity." *Id.*, at 255. After Aikens presented his evidence to the District Court in this case, the Postal Service's witnesses testified that he was not promoted because he had turned down several lateral transfers that would have broadened his Postal Service experience. See Tr. 311–313, 318–320, 325; App. to Pet. for Cert. 53a. The District Court was then in a position to decide the ultimate factual issue in the case.

The "factual inquiry" in a Title VII case is "[whether] the defendant intentionally discriminated against the plaintiff." *Burdine, supra,* at 253. In other words, is "the employer . . . treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Construction Corp.* v. *Waters,* 438 U. S. 567, 577 (1978), quoting *Teamsters* v. *United States,* 431 U. S. 324, 335, n. 15 (1977). The prima facie case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco, supra,* at 577. Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." *Burdine, supra,* at 253.

On the state of the record at the close of the evidence, the District Court in this case should have proceeded to this specific question directly, just as district courts decide disputed

questions of fact in other civil litigation.[5]  As we stated in *Burdine:*

> "The plaintiff retains the burden of persuasion. . . . [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U. S., at 256.

In short, the district court must decide which party's explanation of the employer's motivation it believes.

All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy. There will seldom be "eyewitness" testimony as to the employer's mental processes.  But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact.  Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern "the basic allocation of burdens and order of presentation of proof," *Burdine,* 450 U. S., at 252, in deciding this ultimate question.  The law often obliges finders of fact to inquire into a person's state of mind.  As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago:

> "The state of a man's mind is as much a fact as the state of his digestion.  It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as

---

[5] Of course, the plaintiff must have an adequate "opportunity to demonstrate that the proffered reason was not the true reason for the employment decision," but rather a pretext.  *Burdine,* 450 U. S., at 256.  There is no suggestion in this case that Aikens did not have such an opportunity.

anything else." *Edgington* v. *Fitzmaurice*, 29 Ch. Div. 459, 483 (1885).

The District Court erroneously thought that respondent was required to submit direct evidence of discriminatory intent, see n. 3, *supra*, and erroneously focused on the question of prima facie case rather than directly on the question of discrimination. Thus we cannot be certain that its findings of fact in favor of the Postal Service were not influenced by its mistaken view of the law. We accordingly vacate the judgment of the Court of Appeals, and remand the case to the District Court so that it may decide on the basis of the evidence before it whether the Postal Service discriminated against Aikens.

*It is so ordered.*

JUSTICE MARSHALL concurs in the judgment.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN joins, concurring.

I join the Court's opinion. I write to stress the fact, however, that, as I read its opinion, the Court today reaffirms the framework established by *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), for Title VII cases. Under that framework, once a Title VII plaintiff has made out a prima facie case and the defendant-employer has articulated a legitimate, nondiscriminatory reason for the employment decision, the plaintiff bears the burden of demonstrating that the reason is pretextual, that is, it is "not the true reason for the employment decision." *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 256 (1981). As the Court's opinion today implies, *ante*, at 714–715, this burden "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." 450 U. S., at 256.

This ultimate burden may be met in one of two ways. First, as the Court notes, a plaintiff may persuade the court

that the employment decision more likely than not was motivated by a discriminatory reason. *Ante*, at 714, 716, and 717. In addition, however, this burden is also carried if the plaintiff shows "that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U. S., at 256, citing *McDonnell Douglas*, 411 U. S., at 804–805. While the Court is correct that the ultimate determination of factual liability in discrimination cases should be no different from that in other types of civil suits, *ante*, at 716, the *McDonnell Douglas* framework requires that a plaintiff prevail when at the third stage of a Title VII trial he demonstrates that the legitimate, nondiscriminatory reason given by the employer is in fact not the true reason for the employment decision.