**James ROYAL**

v.

**BETHLEHEM STEEL CORPORATION.**

**Civ. A. No. B–85–1156–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 12, 1986.

Elizabeth C. Petit, Peterson, Petit & Peterson, Beaumont, Tex., for plaintiff.

Dewey Gonsoulin, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff James Royal, a black male employee of Bethlehem Steel Corporation, sued his employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq., as amended, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

The plaintiff was first employed by the defendant on April 3, 1972, as an outside machinist in the maintenance department. He was promoted to leaderman October 20, 1980, and eventually promoted to the position of quarterman (foreman) in the maintenance department on November 11, 1982, assigned to the second or evening shift. The plaintiff held the position of quarterman at the times of the events material to this lawsuit.

In the spring of 1984, Bethlehem purchased an extremely large floating drydock originally constructed by the United States Navy during World War II, originally designed to be transported to various locations in the Pacific Ocean to drydock warships for repairs and maintenance which may have been needed during that conflict. The conclusion of World War II ended the actual use of the drydock (built in several sections), and it remained for over thirty-five years in Pearl Harbor, Hawaii, in a "mothballed" state.

Bethlehem made its business decision to purchase the drydock, make it ready for the long sea voyage from Pearl Harbor to Port Arthur, Texas, where Bethlehem fore-

saw a useful market for the services of the drydock.

In August 1984, Frank Richardson, a plant engineer for the defendant, and plaintiff's superior, was assigned the duty of selecting a crew of ten to twelve men to go to Hawaii to recondition the large drydock purchased from the Navy. The crew finally selected by Richardson, all white male caucasians, made two trips, the first from September 1, 1984, to October 12, 1984, and the second, October 29, 1984, to December 8, 1984. The plaintiff was selected for neither crew, although he contends he timely applied to be selected as a member of the crew selected for such trips and was qualified to perform the required duties in a satisfactory manner. The plaintiff argues the selection decision was made on an impermissible basis, i.e., his race.

The defendant paid all expenses of the crew to Hawaii, and arranged and paid for hotel living quarters and meals for all included in the two crews while on such detached duty. The defendant also agreed to pay for all expenses for a one-week trip to Hawaii for each crew member's wife during the detached duty. Thus, harmony between all of those selected to make the two trips was an element involved in defendant's final selection.

The plaintiff contended, and the defendant agreed, that due to the length of the job in Hawaii and the amount of work to be done, there was a strong probability a substantial amount of overtime work would be required, thus all of those selected would receive extra pay, well in excess of the amount earned by defendant's employees not selected and who remained at their regular jobs in Texas during the same period of time.

A three-day trial on the merits was held and "when a Title VII case has been fully tried on its merits, the appropriate inquiry for the federal courts is not whether the plaintiff has made out a prima facie case but whether the defendant has discriminated unlawfully against the plaintiff." *Barnes v. Yellow Freight Systems, Inc.,* 778 F.2d 1096, 1100 (5th Cir.1985), and

*U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Thus, this court holds that where a defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff in fact did so is no longer relevant. *Barnes, supra* at 1100. The central inquiry then is whether the defendant intentionally discriminated against the plaintiff.

As stated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 707 (1981), the plaintiff retains the ultimate burden of persuading the court by a preponderance of the evidence that the defendant intentionally discriminated against the plaintiff on the basis of race. The plaintiff may meet this burden either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine,* 450 U.S. 248 at 256, 101 S.Ct. 1089 at 1095.

The court must decide which party's explanation of the employer's motivation which it finds most credible. *Aikens, supra.*

> "Often motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the fact finder."

*Thornbrough v. Columbus and Greenville Railroad Co.,* 760 F.2d 633 (5th Cir.1985).

The plaintiff asserts that he has met his ultimate burden for the following reasons:

(1) A white non-salaried employee, to whom the plaintiff was senior, both as to tenure and job category, was temporarily promoted to the salaried position of quarterman (foreman) two times in order to qualify for the Hawaiian assignment, while at the same time the plaintiff had been promoted to and remained a quarterman at the defendant's plant for two years prior to

the selection of the crew to go to the Hawaii job. The white employee was demoted to his old job upon his return from both trips to work on the drydock.

(2) That the defendant intentionally failed to fully investigate fully the plaintiff's qualifications.

In rebuttal, the defendant asserts two "legitimate nondiscriminatory reasons" for sending all white crews sent to Hawaii on two occasions to make the drydock ready for its voyage to Beaumont, Texas:

(1) That the plaintiff was not adequately qualified to be considered for inclusion in the crew.

(2) That during the time the plaintiff remained in Beaumont, he would gain experience needed to further his career with the defendant, working as a quarterman on the day shift instead of his regular assignment to the night shift, and such experience would not easily be gained in the position of night shift quarterman.

The plaintiff contends that the defendant's offered excuses are pretextual and offered by the defendant in an attempt to conceal and excuse its act of discrimination against the plaintiff. The court agrees.

It was the purpose of the crew to make ready the sections of the drydock for transport from Hawaii to Beaumont. Frank Richardson, the job supervisor, testified repeatedly of the special skills that were required of each crew member, such as use of welding and burning experience, safety background, and armed service experience. He also testified that at the time the crew was selected no one knew positively how complex the task would be, despite his initial trip of several days to survey the entire needs of the project. However, a crew member who the court found to be extremely credible, J.D. Leatherwood, testified that a large portion of his duties were that of a laborer involving the removal of a variety of stored equipment which had remained aboard for over thirty years.

Although the defendant has made much ado about qualifications of the prospective crew members selected to work on the dry-

dock, neither qualifications nor seniority were used exclusively by it in the selection procedure.

The defendant also contends that by failing to select the plaintiff for the trip, his experience as a quarterman would be enhanced because plaintiff would gain day shift quarterman experience not otherwise available to him as long as he remained on the night shift, or if he was selected for the dry dock job and had to be detached from the defendant's Beaumont yard. The experience the plaintiff might have gained consists mainly of writing work orders, ordering parts and budgeting. If the plaintiff acually did gain any experience or training in furtherance of his career with the defendant, it was without supervision and guidance, since the regular day shift quarterman (Leatherwood) was detached to work on the overseas job. Thus, the opportunity for such experience was, or appeared to be, minimal in relation to the heavy emphasis placed on it by the defendant. Thus, the court finds this proferred reason to be pretextual.

As the trier of fact, the court concludes the defendant failed to select the plaintiff, not because of the stated reasons, but because defendant's perception that harmony was required among the employees on any extended trip, and the defendant's employees on any extended trip did not desire a lone black to be in 24-hour contact and associated with the all-white crew both at work and quartered at the same hotel. In addition, one week of the assignment defendant paid for the wives' trip to Hawaii, and all of the crew selected was aware of this. Evidence was produced at trial that various white co-employees of the defendant had partaken in racially motivated slurs, insults and hazing against the plaintiff because he was black. The court finds that management personnel knew of these incidents prior to the selection of the crews, and the defendant, through management personnel, yielded to the expressed or unexpressed known racial feelings of other employees selected for the trips. The defendant was fully aware of this conduct on

the part of its employees, and their attitudes, and therefore in furtherance of its perception of employee compatability, failed and refused to select the plaintiff.

It was proved at trial the plaintiff had several qualifications which were stated by defendant as criteria it used in the selection procedure. The plaintiff had special diesel training, some welding and burning experience and firefighting training. The latter two were specific qualifications stated by the defendant, while the former was alleged to be relevant to the work itself. The plaintiff did not have prior naval or damage control experience, but neither did some of the white caucasian employees who were selected.

In regard to seniority, the defendant contends that some selections were made in part on this basis. However, as noted above, the plaintiff was senior in length of service and job responsibility and seniority to some of the white caucasian employees who were actually selected for the two trips.

The court concludes that the defendant's articulated criteria used for a crew selection of all white caucasians was especially tailored to fit the individual employees who were chosen. The defendant now seeks to justify its actions, and they are found by the court to be pretextual.

### DAMAGES

Due to the defendant's discrimination, the plaintiff has suffered damage which is measured by payment for the hours of work that he would have earned on the Hawaii trips, less the payment for those work hours he did earn while he remained at the defendant's Beaumont plant. The parties at trial stipulated that damages would equal $3694.00, based upon the loss of overtime work. This sum will be awarded to the plaintiff.

The plaintiff has also sought attorney's fees and costs. This court finds that in this case, a reasonable attorney's fee, viewed in the light of the work done, the hours expended, the result obtained, the customary hourly fees charged in this area, the difficulty involved in preparation and trial, will be awarded, and the amount will be set by the court, awarded to the plaintiff as the prevailing party, when the total time expended by plaintiff is made known to the court, in addition to taxable costs in the amount of $562.90.

.IT IS SO ORDERED.