Carolyn JORDAN, etc., et al., Plaintiffs,

Sandra M. Pierce–Hanna, et al.,
Plaintiffs–Intervenors,

v.

John WILSON, etc., et al., Defendants,

Gordon M. Ledbetter and John D. Shumway, Defendants–Intervenors.

Civ. A. No. 75–19–N.

United States District Court,
M.D. Alabama, N.D.

June 20, 1990.

J. Richard Cohen, Southern Poverty Law Center, M. Wayne Sabel, Argo, Enslen, Holloway & Sabel, Montgomery, Ala., for plaintiffs.

Robert C. Black, Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for all defendants except Wade L. Moss and Montgomery City–County Personnel Bd.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Wade L. Moss and Montgomery City–County Personel Bd.

Thomas M. Goggans, Montgomery, Ala., for white male police officers of the City of Montgomery and Ledbetter intervenors.

David Smith and Gregory H. Hawley, Maynard, Cooper, Frierson & Gale, Birmingham, Ala., and George B. Azar, Azar & Azar, Montgomery, Ala., for defendants Folmar, Wilson, McGilvray, Eckerman, Cooper & Duffee.

Julian McPhillips, McPhillips, DeBardelaben & Hawthorne, Kenneth Shinbaum, Montgomery, Ala., for Willie Davis.

Gary E. Atchison, Montgomery, Ala., for plaintiff-intervenor Boyd.

Theron Stokes, Montgomery, Ala., for Atty. Sabel.

Vanzetta McPherson, Montgomery, Ala., for Tommi Alford.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This court previously found in this class-action lawsuit that the promotion system of the Police Department of the City of Montgomery, Alabama had both the purpose and effect of discriminating against female police officers in violation of Title VII of the Civil Rights Act of 1964, as amended.[1] *Jordan v. Wilson,* 649 F.Supp. 1038 (M.D. Ala.1986). This cause is again before this court, this time on a motion filed by the class of female officers in the police department on behalf of Corporal Eula Oliver, a black female, challenging the City of Montgomery's recent decisions to demote Corporal Oliver temporarily to the rank of police officer and to deny her a promotion to sergeant. The motion charges that the defendants—the City of Montgomery and its mayor and police chief and several officers in the city's police department—took this action in order to retaliate against Oliver for having participated in this litigation on the side of the complaining female officers.[2] The motion further charges that the defendants' actions violated the consent decree in this lawsuit. For reasons that follow, the court concludes that Oliver is not entitled to any relief.

## I.

In 1983 and 1984, the Pierce–Hanna intervenors—that is, plaintiff-intervenors Sandra M. Pierce–Hanna and Joyce S. Oyler, two female police officers—filed complaints-in-intervention in this lawsuit charging that officials of the City of Montgom-

ery and its police department had denied promotions to female officers because of their sex. On November 17, 1986, the court found that the police department's promotion procedures had an impermissible "adverse impact" on women and, further, that officials of the city and its police department had intentionally used the procedures to discriminate against female officers. *Jordan, supra.* In addition to requiring that the department's promotion procedures "be changed or replaced," *id.* at 1062, the court gave the parties an opportunity to agree upon appropriate individual relief for the named intervenors and other members of the class of female officers. The court added that "[i]f the parties are unable to agree to such relief or if the court declines to approve any such agreement under Fed.R.Civ.P. 23(e), the court will then fashion a procedure to determine which class members are entitled to relief and to what individual relief they are entitled." *Id.* at 1063. The court also enjoined the defendants from retaliating against any female officers because they brought sex discrimination charges against the city. *Id.* at 1064.

The Pierce–Hanna intervenors and the defendants were later able to reach agreement as to all individual claims. The consent decree, which was approved and entered by the court on March 17, 1988, provided, in part, that several female corporals "shall immediately receive front pay to the next rank" and "shall be eligible to compete among themselves" for two sergeant positions in 1989. The decree further provided that those competing for a position "shall go through the court-approved performance evaluation/oral interview procedure in place at the time," and that "[t]he individual with the highest score shall have the position." One of those mentioned in the decree as entitled to this relief was Corporal Eula Oliver.

---

**1.** 42 U.S.C.A. §§ 2000e through 2000e–17. The court found that the promotion system also violated 42 U.S.C.A. § 1983.

**2.** The City of Montgomery and its mayor and police were the original defendants in this law-

suit. Oliver has added the following police officers as defendants: David H. McGilvray, Frank H. Eckermann, Ronald J. Cooper, and Charles S. Duffee.

In 1989, upon recommendation of Police Chief John Wilson, the city promoted Corporal Mabel Pierce, a black female, to sergeant under the consent decree. Oliver, however, ranked higher than Pierce on the promotion register. Wilson says that he did not recommend Oliver because, at the time the sergeant's promotion was to be made, Oliver had recently received a series of "disciplinaries," which had resulted in her temporary demotion from corporal to the rank of police officer.

The Pierce–Hanna intervenors responded by filing a motion in this court charging that the defendants had failed to comply with the consent decree and had retaliated against Oliver because of her participation in this litigation.[3]

## II.

■ The court turns first to the issue of whether Oliver has been a victim of impermissible retaliation. Oliver claims that the defendants retaliated against her both by denying her a promotion to sergeant and by demoting her to police officer. The method of establishing a retaliation claim is essentially the same as for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600–01 (11th Cir.1986). An employee has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of evidence, which once established raises a presumption that the employer retaliated against the employee. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To establish a prima facie case, an employee must show that she was engaged in protected opposition to Title VII discrimination; that she suffered adverse treatment simultaneously with or subsequent to such opposition; and that there was a causal link between the protected opposition and the adverse treatment. *Donnellon v. Fruehauf Corporation*, 794 F.2d at 600–01.

■ If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer retaliated against the employee. The employer may do this by articulating a legitimate, non-retaliatory reason for the employment decision, which is clear, reasonably specific and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *Burdine, supra.*

■ Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for retaliation. The employee may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies her ultimate burden of demonstrating by a preponderance of the evidence that she has been the victim of unlawful retaliation. *Burdine, supra.*

■ However, where, as in this case, a court has conducted a full hearing and has sufficient evidence to make a determination of whether an employee has been a victim of retaliation, the court need not go through the above burden-shifting process and should go ahead and reach the ultimate issue of retaliation. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Powers v. Alabama Department of Education*, 854 F.2d 1285, 1290 (11th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). The court does that here.[4]

---

3. Of course, any retaliation on the part of the defendants would violate both this court's order of November 17, 1986, and Title VII. *See* 42 U.S.C.A. § 2000e–3(a).

4. However, even if the court were to go through the *Burdine* burden-shifting process, the result would the be the same. Oliver has established a prima facie case. She has met the first part of

The defendants state that the reason they demoted Oliver and passed over her for promotion is that her performance as a police officer had become chronically poor. This inadequate performance is reflected in the following documented instances.

(1) On March 22, 1988, Oliver was counseled for failing to respond to a request for a backup unit in her district. Oliver was instructed to learn her district.

(2) & (3) A trial board of Oliver's peers found her guilty of two offenses. The first offense was that on September 17, 1988, Oliver failed to respond immediately to a "backup call" and that she lied to a supervisor about where she was when she received the call. The second offense was that on September 23, 1988, Oliver refused to comply with a supervisor's order to tell him whether she had secretly and deceptively secured a copy of another officer's statement regarding the September 17 incident. Oliver was suspended for two days for these offenses.

(4) Oliver was counseled for having failed on November 21, 1988, to advise her supervisor promptly of a theft offense involving $4,800 of sterling silver from a residence. The offense report named a suspect.

(5) Oliver was counseled for having failed on December 14, 1988, to inform an officer in another district that he should check a "vacation home" that is, the home of a person who had requested a home check while he or she was on vacation. According to the counseling form "Corporal Oliver failed to carry out her duties as she knew or should have known them to be."

(6) & (7) Oliver was counseled for missing the bus for her firearms training class on December 15, 1988. She was also counseled for being untruthful about the incident. She stated that she was four or five minutes early but that the bus had left; other officers said she was late.

Oliver was also counseled for "poor attitude." On December 16, 1988, she was verbally reprimanded for not paying attention at roll call. According to her supervisor, she continually "looks off into space and at no time directs her eyes toward the podium."

Her immediate supervisors recommended that, in light of her continuous poor behavior, she should be demoted from corporal to police officer. The recommendation was not adopted.

(8) On December 18, 1988, Oliver was counseled for failing over a period of three days, from December 15 to 17, to check "vacation homes." Since this was not the first time Oliver had neglected her duties, her immediate supervisors recommended some form of discipline, but none was taken.

(9) On December 31, 1988, Oliver was counseled for not answering a bank alarm call. Her immediate supervisors noted that she had a " 'don't care' attitude" about her work and they recommended that she should be demoted. The recommendation was not adopted.

(10) & (11) On December 31, 1988, Oliver was caught out of her district. Two weeks before, on December 14, 1988, the police department had issued a memorandum that anyone "out of district" would be subject to disciplinary charges. Her supervisors placed charges against her.

---

the three-part test: as described later in this memorandum opinion, she was an active participant in this litigation. She has met the second part as well: the mayor and police chief demoted her and passed over her name to promote another woman to sergeant. And the third requirement of causal connection is met by the fact that she was demoted and denied a promotion shortly after her participation in these proceedings. *See Donnellon v. Fruehauf Corporation,* 794 F.2d at 601 (the short period of time between filing of discrimination complaint and discharge established causation). Schlei and

Grossman, *Employment Discrimination Law,* 2d Ed., at 559 ("Closeness in time between the employer's knowledge of the protected ... participation and the adverse activity" may establish causation).

However, as explained later in this memorandum opinion, the defendants have articulated legitimate, non-retaliatory and non-discriminatory reasons for demoting Oliver and for refusing to promote her, and Oliver has not convinced the court that these reasons are a pretext for retaliation.

Also, in light of her continuing poor performance, they all recommended that she should be demoted from corporal to police officer.

Less than a month later, on January 16, 1989, Oliver was caught out of her district again. Her supervisor brought additional charges against her.

On January 18, 1989, Chief Wilson conducted an administrative hearing on the "out-of-district" charges against Oliver. He found her guilty and recommended to the Mayor of Montgomery that she should be demoted. The mayor upheld the recommendation and demoted her. Oliver was re-promoted to corporal on August 4, 1989.

The court has independently assessed the evidence and agrees with the defendants that Oliver is guilty of the conduct described above. The court is further convinced, and so finds, that the defendants demoted her and refused to promote her solely because of her chronically poor performance as a police officer.

In reaching this conclusion, the court has carefully considered the evidence submitted by the Pierce–Hanna intervenors in support of their claim of retaliation. The evidence is undisputed that Oliver was one of the many female police officers who, as a result of this court's order of November 17, 1986, filed claims against the City of Montgomery Police Department and later resolved those claims with the consent decree of March 17, 1988. It is also undisputed that on September 9, 1988, the Pierce–Hanna intervenors filed a motion on behalf of Oliver and another female officer seeking a determination of the amount of frontpay they should receive under the consent decree, and that on November 17, 1988, the court resolved the motion in favor of Oliver and the other officer. The court has also considered the fact that Chief Wilson has

referred to Oliver's litigation as "ludicrous" and motivated by "greed," and that he has referred to those who sue him and other city officials as "greedy." The court is convinced, however, and so finds, that while the defendants were fully aware of Oliver's participation in this litigation they did not in any manner consider her participation in reaching their decision to demote her and not promote her.[5]

Oliver has pointed out that there are male officers who were not demoted even though they were caught out their districts. The circumstances of these officers are distinguishable from Oliver's for two reasons. First of all, Oliver was demoted for chronically poor performance; she was not disciplined for just one, or even two, incidents of being out of her district. The male officers' records were not nearly as poor as Oliver's. Second, just before Oliver committed her offenses, the police department had issued a directive warning officers to remain in their district and threatening those who did not with discipline. Oliver violated this directive not once but twice within a short period of time.[6]

Oliver contends that the eleven incidents described above are, in whole or in part, the result of efforts by four of her fellow officers—David H. McGilvray, Frank H. Eckermann, Ronald J. Cooper, and Charles S. Duffee—to harass her and retaliate against her because of her participation in this litigation. The court is convinced, and so finds, however, that these four officers acted justifiably and appropriately. The actions these officers took against Oliver were in no measure motivated by a desire to harass her or to retaliate against her for any reason.[7]

Finally, Oliver contends that Chief Wilson refused to transfer her out of the pa-

**5.** The court is not convinced that Oliver's participation in this litigation was even a "substantial" or "motivating" factor in the decision to demoted her to police officer and not promote her to sergeant. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**6.** The court is troubled by evidence that Lieutenant Colonel Robert E. Mallory was merely reprimanded for sexual harassment. The court is nevertheless convinced that, while the city's action toward Mallory may have been light, Oliver was not herself retaliated against.

**7.** In reaching this conclusion regarding these four officers, the court is mindful of evidence that these four officers are opposed to this litigation.

trol division for retaliatory reasons and that her poor performance was due to his refusal to transfer her. Oliver testified that male officers had asked for and received transfers. The court is not convinced that Wilson refused to transfer her for retaliatory reasons. In fact, the evidence reflects that Wilson and other officers in the police department went out of their way to help Oliver improve herself. Moreover, Chief Wilson's refusal to transfer Oliver does not justify Oliver's poor performance as an officer. Oliver has a duty to do her best and perform well, irrespective of whether she is in the patrol division or another division.

The court has been sensitive to the fact that the defendants have been guilty of similar retaliation against other police officers. There is, of course, the retaliation that led the court to enter an order banning retaliation. *Jordan*, 649 F.Supp. at 1060–62, 1063–65. There is also the recent holding by the court that, for retaliatory reasons, Chief Wilson refused to appoint as his deputy chief any one of the four majors who had participated on the side of plaintiffs in this lawsuit and a companion case. *United States v. City of Montgomery*, 744 F.Supp. 1074 (M.D.Ala.1989), *aff'd*, 911 F.2d 741 (11th Cir.1990) (table).

The court is also sensitive to the fact that some of the charges against Oliver are based on subjective observations about her conduct. A primary problem posed by subjective criteria in employment discrimination and retaliation suits is that rigorous evaluation by the factfinder of the weight accorded these factors by the employer is extremely difficult. The Eleventh Circuit has noted before, in language applicable to the setting at hand, the difficulties encountered by courts in weighing an employer's proffered reliance on subjective criteria in justifying an employment decision.

> This circuit has frequently noted the problems associated with this type of worker assessment and noted that subjective evaluations involving white supervisors provide a ready mechanism for

racial discrimination. This is because the supervisor is left free to indulge a preference, if he has one, for one race of workers over another. In addition, subjective and vague criteria may be insufficient reasons given by an employer for its failure to rehire because such criteria do not allow a reasonable opportunity for rebuttal. The employee is left without any objective criteria to point to in order to show competence.

*Miles v. M.N.C. Corp.*, 750 F.2d 867, 871 (11th Cir.1985) (citations and footnotes omitted). *See also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 1009, 108 S.Ct. 2777, 2797, 101 L.Ed.2d 827 (1988) (Blackmun, J., joined by Brennan and Marshall, JJ., concurring in part and concurring in the judgment) (cautioning, in a disparate impact context, against "[a]llowing an employer to escape liability [under Title VII] simply by articulating vague, inoffensive-sounding subjective criteria"). Though *Miles* involved allegations of racial discrimination under Title VII, the appellate court's admonition to district courts to view with caution an employer's reliance on subjective criteria applies with full force to the claim of retaliation in this case.

With the above considerations in mind, the court is nevertheless firmly convinced, based on all the evidence, that Oliver has not been a victim of retaliation.[8]

### III.

■ The court will consider next the Pierce–Hanna intervenors' claim that the defendants violated the 1988 consent decree. The intervenors correctly note that the consent decree has no provision allowing the police department to refuse to promote Oliver because she received a series of disciplinaries and was temporarily demoted. This fact, however, does not mean that parties to the decree may not seek court approval to be relieved of an obligation under the decree or to have the decree modified because of new and changed circumstances.

---

**8.** In fact, the evidence reflects that the police department demonstrated remarkable restraint in waiting as long as it did before demoting Oliver.

■ A court has broad and flexible powers to modify an injunction to the extent it is no longer equitable. *New York State Association for Retarded Children Inc. v. Carey*, 706 F.2d 956 (2d Cir.) (Friendly, J.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983). But, of course, whether an injunction has become inequitable will often depend upon the special characteristics of the case before the court. *Id.* at 967–71.

Oliver correctly notes that the matter before the court is a "consent decree." In *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) (Cardozo, J.), the Supreme Court held that consent decrees are to be treated like injunctions for purposes of modification. The Court wrote that "The result is all one whether the decree has been entered after litigation or by consent." *Id.* at 114, 52 S.Ct. at 462. The Court rejected the notion that "a decree entered upon consent is to be treated as a contract and not as a judicial act." *Id.* at 115, 52 S.Ct. at 462. The Court explained that "The consent is to be read as directed toward events as they then were. It was not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be." *Id. See also New York State Association for Retarded Children v. Carey*, 706 F.2d at 967–71 (discussing the evolving standards for modifying consent decrees).

■ The court recognizes that the defendants have not expressly sought modification of, or relief from, the 1988 consent decree. The court, however, believes that the defendants' response to Oliver's claim should be viewed as an implicit request for such relief. In their brief the defendants acknowledge that they have not complied with the "letter" of the consent decree;

however, in recognition of the fact that the decree does not expressly address Oliver's changed circumstances, they argue that they have complied with the "spirit" of the decree. The defendants are in substance asking that the court modify the decree to allow them to meet these changed circumstances. The court is also impressed that its consideration of this issue at this late date will not in any way prejudice the Pierce–Hanna intervenors and Oliver in the presentation of their contentions.[9]

With the above considerations in mind, the court believes that the defendants should be relieved of their obligation to promote Oliver only if they can show that Oliver is guilty of the conduct with which she is charged and that, if she is, the conduct is serious enough to make her, not simply less qualified, but actually unfit or no longer qualified for promotion. The defendants claim that Oliver was undeserving of promotion to sergeant because of her inadequate performance following entry of the consent decree. The court agrees with the defendants that Oliver is guilty of all of the eleven incidents described in part II of this memorandum opinion. The court also agrees that Oliver's conduct was serious enough to make her unfit for promotion. Oliver's performance as a police officer, following entry of the consent decree, was chronically inadequate. Her conduct was not limited to one serious infraction, or one or two minor transgressions, indicating a temporary and infrequent inattention to duty. Oliver's conduct was much more egregious. It reflected a severe indifference to duty and almost contemptuous disregard for directives and orders of the police department. Oliver was, as the defendants contend, deserving of a demotion and undeserving of a promotion.[10]

---

9. Alternatively, the court would add that it agrees with the defendants that even without the modification Oliver would not be entitled to promotion if she was guilty of conduct that made her unworthy or unfit for promotion. Implicit in the consent decree was a promise by Oliver she would in good faith continue to be an officer deserving of promotion. If Oliver breached this promise then she also breached the consent decree and thereby relieved the defendants of their obligations to her under the

decree. In fact, for reasons which this court has already given in this memorandum opinion, the court is convinced and so finds that Oliver breached this implicit promise by engaging in conduct that not only made her unfit for promotion at this time but deserving of a demotion as well.

10. The conclusions the court reaches today should not be understood to mean that Oliver is

Moreover, to have promoted Oliver—in particular, in the midst of her temporary demotion—would have been unjust both to the department and to Oliver herself. It would have been unjust to the department because it would have severely undermined the disciplinary structure needed to run the department in an efficient and professional manner. It would have been unfair to Oliver because it would have denied her the benefit of the discipline she needed to correct and improve her unsatisfactory behavior. The court recognizes that Oliver has, in fact, been punished twice for her conduct.[11] First, she was demoted to police officer, and, second, she was denied a promotion to sergeant. But her conduct warrants this result. She deserved to be disciplined with a demotion, and, at the same time, she was not worthy of a promotion.

Finally, it is important to note that the promotion of Pierce instead of Oliver is within the spirit of this case. The consent decree was intended to redress wrongs of sexual discrimination and retaliation practiced on women in the police department. The promotion of Pierce, who like Oliver is a female, will still further this purpose.[12]

An appropriate judgment will be entered.[13]

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that the motion to enforce judgment and for supplemental relief, filed on February 9, 1989, and amended on March 20, 1989, be and it is hereby denied.

It is further ORDERED and DECLARED that the consent decree entered on March 17, 1988, be and it is hereby modified so as to authorize the defendants—the City of Montgomery, Alabama and its mayor and police chief—to promote Corporal Mabel Pierce, rather than Corporal Eula Oliver, to the rank of sergeant.

It is further ORDERED that defendants David H. McGilvray, Frank H. Eckermann, Ronald J. Cooper, and Charles S. Duffee, who were previously added to this litigation at the request of the Pierce–Hanna intervenors, are dismissed.

---

not entitled to a promotion under the consent decree in the future. Her conduct since her demotion may have improved to the extent that she is no longer unworthy of promotion.

11. Oliver correctly observes that, had she been a sergeant when she was demoted and re-promoted, she would be a sergeant today. Therefore, she has suffered both a demotion and the loss of a promotion.

12. The police department is also under an injunction not to discriminate on the basis of race. Since both Oliver and Pierce are black it does not appear that race played any role in Pierce's selection.

13. The court has authorized the defendants, without a formal request, to depart from the consent decree as to the 1989 promotions to sergeant only. *In the future, however, the defendants must seek formal court approval before taking any action which conflicts with any of the orders of the court.*