Lillie J. **WILLIAMS**, Plaintiff,

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES**, Defendant.

No. LR–C–97–031.

United States District Court,
E.D. Arkansas,
Western Division.

Nov. 10, 1998.

Lewis Ward Littlepage, Little Rock, AR, for Plaintiff.

Frank J. Wills, III, Arkansas Department of Human Services, Office of Chief Counsel, Little Rock, AR, Raymond E. Boyles, Sherwood, AR, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROY, District Judge.

The matter before the Court is an action filed under Title VII of the Civil Rights Act of 1964, as amended. The Plaintiff, Ms. Lillie J. Williams, is a black female. By previous order [DOC # 26], the Court ruled in favor of defendant, the Arkansas Department of Human Services ("DHS"), on all issues except plaintiff's claim that she received a three day suspension from her employment on account of her race and/or her sex. Following a subsequent trial and the submission of post trial briefs, the matter is now ripe for ruling. For the reasons set out below, the Court finds in favor of the defendant.

\* \* \* \* \* \*

The plaintiff was hired in June of 1995 by the State of Arkansas' Department of Human Services to work in its Division of Administrative Services in an accounting position. Her chief responsibilities included "performing general bookkeeping duties and related tasks," including managing DHS forms and records. She was advised that she would be expected to perform "related responsibilities as required or assigned." At the time she began work, she was further advised that a refusal by an employee to carry out reasonable work related instructions would result in a three day job suspension. *Defendant's Ex. 5* at 19.

By approximately April of 1996, tasks for the plaintiff to perform at the DHS supply warehouse had dwindled to the point that plaintiff's supervisor could not give her a full day's worth of assignments. Consequently, she was transferred to the mail room.[1] After

---

1. It is plaintiff's position that she was transferred because she had discovered auditing irregularities. The Court does not find this assertion credible. However, it is not relevant to the matter of proving that plaintiff was suspended on account of her race or sex.

two days, the mail room transfer was rescinded after plaintiff complained that she was not able to do the mail room work.

In May of 1996, the plaintiff was transferred to Central Supply, again because of lack of work at her old assignment. Despite the fact that the pay classification for Central Supply positions was Grade 8 to Grade 11, plaintiff continued to be paid at her Grade 12 pay level. At her new assignment, the plaintiff's principal duties were "updating and maintaining supply requisition files and researching customer inquiries." *Defendant's Exhibit 6.* She also spent time taking inventory.

While working in Central Supply, the plaintiff was occasionally asked to help out by filling customer requisitions when Central Supply was short-handed. These were small items, boxes of pens, pencils, etc., and never weighed more than two pounds, usually much less.

Plaintiff "filled in" in this manner, without objection, until September. On September 17, 1996, she told her supervisor that she could no longer fill customer requisitions due to "health reasons." Her supervisor asked her to provide a doctor's explanation but plaintiff never did. In any event, she was not again asked to help fill requisitions until October 14, 1996. On that day, severe staffing problems necessitated plaintiff's supervisors directing her to help fill requisitions. She refused, instead demanding that her supervisor's supervisor, Larry Mobbs, reduce to writing his instruction to her to fill requisitions. After he did so, she immediately left her position and went to another DHS office to file a grievance that same day.

Nowhere in her grievance of October 14, 1996, does she make any claim that she was being discriminated against on account of her race or sex. Her grievance was denied.

After an administrative review of the incident of plaintiff walking off the job, it was recommended that plaintiff receive a three day suspension beginning November 6, 1996. This is the standard "first level of discipline" for a DHS employee who either commits "immediate disobedience" or refuses to carry out a proper work related directive. *Defen-*

*dant's Exhibit 5* at 19. Plaintiff never showed up for work again following the three day suspension. Pursuant to DHS policy, she was fired for job abandonment. Following that, plaintiff filed another grievance in which she essentially argued that she had been asked to do work not included in her job description. However, in none of her submissions relating to this latter (November) grievance does plaintiff ever suggest that she was suspended on account of her race or sex. Both the presiding officer at her discharge hearing and the director of DHS concluded that the three day suspension was proper.

\* \* \* \* \* \*

In the order of proof and production in a Title VII discrimination case, a plaintiff must first put forth a *prima facie* case. If he or she does, the defendant must articulate a legitimate, non-discriminatory reason for disciplining or discharging an employee. If the defendant does so, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). It must be remembered that "the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *Id.,* citing *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403.

In the case at bar, the Court does not believe that the plaintiff has even made a *prima facie* case. For example, she can not show that she was replaced at her previous slot by a white person or a male. Indeed, she was not replaced at all; her responsibilities had dried up to the point that she had to be transferred (without her suffering any loss of pay or possibility of advancement). What little was left of her responsibilities was simply absorbed by another employee already on the job. Furthermore, plaintiff has not demonstrated that any whites or males have received any other punishment for walking off the job and disobeying a direction to work than the same three day suspension that she received.

948

However, even if the Court were to assume for the purposes of this order that the plaintiff had made her *prima facie* case, she would nevertheless still lose. The defendant has certainly articulated legitimate, non-discriminatory reasons for suspending the plaintiff. Therefore, the plaintiff must "make her case," i.e., she must still prove that the reason she was suspended for three days was on account of her race or her sex. This she has utterly failed to do.

At this point in the order, the Court would ordinarily weigh the merits of evidence offered by the plaintiff, assigning it credibility or discounting parts of it. However, other than the plaintiff's own testimony, she has not presented any evidence. All she has put before the Court are musings and suppositions, totally uncorroborated, that the defendant endeavors to push all women and minorities down to menial positions, and that the three day suspension she received was all part of that pattern of conduct. Simply put, the Court finds no credible evidence in support of such a theory.

More to the point, the Court finds that the plaintiff has not met her burden of proving to this Court that she was suspended for three days because on account of either her race or sex. Accordingly, the judgment will be entered for the defendant.

IT IS SO ORDERED.