SMITH, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that no reasonable jury could infer that Wilson’s poor performance evaluation was in part a result of her protected speech. At the summary judgment stage, we view the evidence “in the light most favorable to the nonmoving party.” Davison, 490 F.3d at 654 (quotation and citation omitted). To view the evidence in the light most favorable to Wilson means, in part, that we “give [Wilson] the benefit of all reasonable inferences.” See Dace v. ACF Indus., Inc., 722 F.2d 374, 375 (8th Cir.1983) (citations omitted). Under this standard, a reasonable jury could find that Miller retaliated against Wilson for her protected speech.
As,, the majority, correctly notes, a -poor performance evaluation, on its own, does not constitute an adverse employment action. See Turner, 421 F.3d at 696. But, a poor performance evaluation does constitute an adverse employment action “where the employer subsequently uses the evaluation as a basis to' detrimentally alter the terms or conditions of the recipient's employment.” Id. (quotation and citation omitted). Thus, the classification of Wilson’s performance evaluation as-an adverse employment action is tied to its use in the decision not to promote her to the Director of Recreation Centers and Programs. If the hiring manager used the performance evaluation as a basis in the hiring decision, it constitutes an adverse employment action.
The majority’s conclusion- that Wilson failed to “present[ ] any evidence that the performance evalua.tion[ ] w[as] actually used in the promotion decision or that the comments regarding Wilson’s protected speech negatively influenced the decision” suffers from a significant defect. The majority draws the conclusion without granting Wilson the benefit of all reasonable inferences. In fact, the majority’s conclusion is premised on unfavorable inferences drawn from the facts.
First, the majority finds-that-the comments on Wilson’s 2012 performance evaluation “were consistent with a 2011 performance review.” ; From this, the majority concludes that “[t]he 2011 performance review- further indicated that Wilson needed improvement in the areas of communication and interpersonal skills.” It-is unclear if- the majority is saying that Wilson was not promoted because she “needed improvement in the areas of communication and interpersonal skills” or interpreting .the “consistency” of the reviews as negating a retaliatory motive. Either is problematic. If the former, the majority has conceded that the 2012 performance, evaluation served *972 “as a basis” in the hiring decision. See id. If the latter;.the majority has unfavorably inferred, that the consistency between the 2011 and 2012 performance evaluations is attributable solely to “Wilson’s demeanor” rather than independently attributable to Wilson’s protected activity.
Next, the majority’s, conclusion rests on an unfavorable interpretation of Wilson’s deposition testimony. In concluding that “Wilson does not offer any evidence that the MPRB and Miller would have chosen her as the Director of Recreation Centers and Programs absent the comments in Wilson’s December 2012 performance evaluation,” the majority finds that Wilson “asserted that the failure to promote her ... was because she is ‘militant’ and ‘arrogant,’ not because of her speech.” This is a misreading of Wilson’s deposition testimony. At her deposition, counsel for the MPRB and Miller asked Wilson, “what is [the decision not to select you for the position of Director of Recreation Centers and Programs] retaliation for?” The following interchange resulted:
[Wilson.] Again, all of the things that I’ve already mentioned, the fact that I got my job back, the fact that all — all the things that was—
[Counsel.] The reinstatement?
[Wilson;] The re — the reinstatement, the fact that we went through Civil Service and the things that she indicated.
[Counsel.] The fact that she believed that you signed off on falsification of documents?
[Wilson.] Yes. The fact that I’m militant, the fact that I’m arrogant, all — all of these things were retaliatory in nature ....
Wilson’s performance' evaluations are part of “all of the things that [she had] already mentioned.” Earlier in the deposition, counsel asked Wilson if she believed that the 2012 evaluation was retaliation for speaking up at the budget meeting. Wilson responded, “Absolutely.” Counsel also asked Wilson how the evaluations affected her ability to receive a promotion. Wilson answered that because of Miller’s “input on them,” she “was not going to be hired.” Moreover, in paragraphs 46 and 49 of-Wilson’s complaint, she clearly connects the negative performance evaluation that she received in 2012 to her failure to be promoted. The majority’s interpretation of Wilson’s deposition testimony not only relies on an unfavorable inference — that her demeanor that was perceived as militant and arrogant was disconnected from her raising questions on delicate issues in an open budget meeting — but also is directly contrary to her complaint.
Whether the performance evaluation was used in the decision not to promote Wilson is a material fact in dispute. In order to establish this fact, at this stage, there need only be evidence from which a jury could reasonably infer such a conclusion. Wilson meets that low bar. As the majority sets out, Wilson received a poor performance evaluation because of her protected speech. The performance evaluation was available to the hiring manager during the hiring process.. '■ It is not a stretch to infer. that a hiring manager would consult a candidate’s performance evaluations in making a hiring decision. After all, part of the -purpose of a performance evaluation is to make it possible to evaluate an employee’s ability to serve the employer, whether in the employee’s current position or in a' promoted position. This inference is strengthened when it is viewed in the current context — Wilson was one of two finalists- for the Director of Recreation Centers and Programs. The separation between two finalists may very well be a recent negative performance evaluation. This point leads to the next. Whether the performance evaluation led to the hiring decision is a question of causa *973 tion. Questions of causation should be submitted to a jury unless “the question.is so free from doubt as to justify taking it from the jury.” Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir.2002) (quotation and citation omitted). A reasonable jury could infer that the hiring manager referenced Wilson’s performance evaluation in making' the hiring decision. This question is not-so free from doubt to warrant taking it from the jury.
The majority effectively requires that Wilson establish - that the - performance evaluation was improperly used in the hiring decision at the summary judgment stage. That is not the law. Such -smoking-gun evidence rarely existé. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (noting that “[tjhere will seldom be ‘eyewitness’ testimony as to the employer’s mental processes”).' For this reason, we have long held that questions of motive and causation are peculiarly suited to resolution by a-, factfinder. See, e.g., Krenik v. Cty. of Le Sueur, 47 F.3d 953, 959 (8th Cir.1995); City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 274 n. 5 (8th Cir.1988); Keys v. Lutheran Family & Children’s Servs. of Mo., 668 F.2d 356, 358 (8th Cir.1981).
Wilson must also prove that, her protected speech was , a substantial or motivating factor in Miller’s decision to take the adverse employment action. See Davison, 490 F.3d at 654-55. The performance evaluation contains sufficient evidence' to show that Miller based her poor evaluations of Wilson, in part, on Wilson’s protected speech. Under the sections “Decision Making and Problem Solving” and “Interpersonal Skills,” Miller gave Wilson a rating of “Needs Improvement.” In both sections, Miller cited specifically to Wilson’s protected speech.
Because Wilson has established a prima facie case of First Amendment retaliation, I respectfully submit that the district court’s grant, of summary judgment should be reversed and remanded for further proceedings.