**David V. MANN, Appellant**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** Appellee

**No. 16-7031 September Term, 2016**

United States Court of Appeals, District of Columbia Circuit.

Filed On: June 30, 2017

Joseph M. Hannon, Jr., Hannon Law Group, LLP, Washington, DC, for Plaintiff-Appellant

Janice Lynn Cole, Nicholas Louis Phucas, Washington Metropolitan Area Transit Authority (WMATA), Office of the General Counsel, Washington, DC, for Defendant-Appellee

Before: Henderson, Brown and Kavanaugh, Circuit Judges.

**JUDGMENT**

Per Curiam

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs filed by the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the District Court's order be affirmed.

Plaintiff David Mann, a black male, was a police lieutenant employed by the Washington Metropolitan Area Transit Authority (WMATA). One evening he responded to a report that a disorderly man was throwing rocks at a WMATA police booth. He soon learned that the wrongdoer, John Dowtin, had also started a fight with a WMATA bus driver. On Mann's arrival, Dowtin was on the ground, surrounded by WMATA employees. Dowtin cursed, threw his shoes in the street and otherwise behaved erratically. Mann would later say he thought Dowtin was "on something" like "PCP." Supplemental Appendix (SA) 201. Mann decided to arrest and handcuff Dowtin and thus ordered him to "give me your hands." SA 70-71, 203. Dowtin "passive[ly] resist[ed]," tucking his hands between his body and the ground. SA 203. Mann punched Dowtin in the upper body about 20 times; twisted his arm; bent his hand back until he heard bones cracking; pepper sprayed him; and repeatedly lifted him off the ground and "slam[med] him face first into the ground." SA 51. A bystander caught some of the incident on video with a mobile phone. In the footage, Dowtin can be heard screaming in pain. He was hospitalized with a broken back, three facial fractures and six broken ribs.

After an investigation, and acting on the unanimous recommendation of six deputy chiefs, WMATA police chief Michael Taborn—who, like Mann, is a black male—fired Mann for using excessive force. Mann sued WMATA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that his termination was the result of race discrimination. In a thorough opinion and order, the district court granted summary judgment to WMATA. *Mann v. Washington Metropolitan Area Transit Authority (WMATA)*, 168 F.Supp.3d 71 (D.D.C. 2016). Mann challenges four aspects of the court's decision. We reject each of his contentions.

*First*, Mann argues that the district court applied the wrong legal standard. He is mistaken. Under the governing cases, the "one central question" is whether Mann "produced sufficient evidence for a reasonable jury to find that [WMATA's] asserted non-discriminatory reason"—Mann's excessive force—"was not the actual reason" for the firing and that race discrimination was. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-16, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). That is the inquiry the district court undertook. 168 F.Supp.3d at 81. Mann faults the court for failing to consider whether Taborn "reasonably" concluded that Mann used excessive force. Appellant's Br. 20-21. The court in fact considered "the reasonableness of [Taborn's] conclusion," including his reliance on the unanimous opinion of his deputies. 168 F.Supp.3d at 81 (capitalization altered); *see id.* at 81-82. And whatever the reasonableness of Taborn's belief, Mann has not even begun to show that Taborn's finding of excessive force was a *pretext* meant to mask racial animus. *See Brady*, 520 F.3d

at 495-96 & n.4 (plaintiff must demonstrate "that the employer's stated reason was not the actual reason" and "that the actual reason was a racially discriminatory reason").

*Second*, Mann contends that Taborn's conclusion was indeed unreasonable. As noted, that is largely beside the point absent evidence of pretext. In any event, the contention fails on its own terms. Based on the bystander's video—itself a strong basis for Taborn's decision—a trainer at WMATA's police academy opined that Mann's conduct was "not in compliance with the defensive tactics taught" to WMATA police and was not justified by Dowtin's minimal resistance. SA 77. Also, to repeat, Taborn's deputies all agreed that Mann used excessive force. Mann says that WMATA's investigation and resulting report were insufficient and misleading—so much so that Taborn mistakenly thought Dowtin was unconscious when Mann first encountered him. But the record belies any notion that WMATA's investigation was "so unsystematic and incomplete that a factfinder could conclude that [WMATA] sought, not to discover the truth, but to cover up its own discrimination." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015). Also, Mann misconstrues Taborn's mistake. Taborn incorrectly recalled, two and a half years after he fired Mann, that Dowtin was unconscious. No evidence suggests he harbored such a misunderstanding at the time of the firing.

*Third*, Mann contests the district court's analysis of alleged "comparator" WMATA officers who, in his telling, were punished less severely for equivalent violations because those officers are not black. Only one of the alleged comparators, Y.C., engaged in conduct remotely similar to Mann's: he twice kicked an arrestee in the head and was suspended for three days. But Y.C.'s case is not "nearly identical" to

Mann's in "all of the relevant aspects." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (internal quotation omitted). Unlike Dowtin, who offered only passive resistance, the victim in Y.C.'s case pushed Y.C., fled and wrestled with officers before Y.C. kicked him. Additionally, the victim suffered only a small abrasion to his face, a far cry from the injuries Dowtin suffered when Mann repeatedly punched him and "slam[med] him face first into the ground." SA 51.

*Fourth*, Mann claims the district court improperly denied his motion to designate an expert. We review this claim for an abuse of discretion, *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1109 n.9 (D.C. Cir. 2012), and discern none. Mann attempted to designate the expert after the discovery deadline, which was reason enough to deny his motion. *See* FED. R. CIV. P. 26(a)(2)(D) ("A party must make [expert] disclosures at the times and in the sequence that the court orders."). Also, the court had latitude to—and did—exclude the expert on the ground that his testimony was insufficiently probative of race discrimination and would sow confusion. *See* FED. R. EVID. 401, 403. The expert proposed to testify that WMATA should have had, but lacked, a policy of "defer[ring] administrative action pending the outcome of a criminal investigation." Mann App. 41-42. Mann connects that excluded opinion to the fact that, after he was fired, a Maryland judge acquitted him of assault. But this is a discrimination case, not a grievance proceeding, and the expert opinion and acquittal have only a remote, if any, bearing on whether Taborn fired Mann because he is black.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.